# EXHIBIT A

## OPERATING AGREEMENT
## OF
## CROSSCHECK STUDIOS, LLC

**THIS OPERATING AGREEMENT OF CROSSCHECK STUDIOS, LLC** (this "Agreement") is made and entered into as of February 18, 2021, by and among the Company and the members listed on Schedule A attached hereto (the "Members").

The Members have formed a limited liability company (the "Company") pursuant to the laws of the State of California by filing the Articles of Organization of the Company with the California Secretary of State on February 17, 2021. Accordingly, the Members agree as follows:

1.     **Formation.**   The Members have formed a limited liability company (the "Company") pursuant to the California Revised Uniform Limited Liability Company Act, set forth as Sections 17701-17713 of the California Corporations Code, as the same may be amended from time to time (the "Act") and subject to the terms, provisions and conditions set forth in this Agreement.

2.     **Filing.**   In connection with the formation of the Company, Irene Y. Lee, an authorized person (the "Organizer"), caused Articles of Organization that comply with the requirements of the Act to be properly filed with the California Secretary of State.  Each Member hereby ratifies and confirms the filing of the Company's Articles of Organization and agrees to hold the Organizer harmless from any liability incurred in connection with such filing.

3.     **Name.**  The name of the Company shall be "CrossCheck Studios, LLC."

4.     **Purpose.**   The purpose of the Company is to engage in any lawful activity for which a limited liability company may be organized under the Act.

5.     **Members and Limited Liability Company Interest.**   The names and addresses of the Members are set forth on Schedule A attached hereto, as the same may be amended from time to time.   As of the date hereof, the Members hold such limited liability company interest of the Company as set forth on Schedule A attached hereto.

6.     **Capital Contributions.**   Capital contributions may be made from time to time by the Members as the Members determine.

7.     **Profits and Losses.**   The Members will treat all profits and losses of the Company as each Member's own profits and losses for federal income tax purposes and state income tax purposes where applicable.   The Company is intended to be a disregarded entity for federal income tax purposes and state tax purposes where such treatment is available.

8.     **Distributions.**  Distributions will be made to the Members at the times and in the aggregate amounts determined by the Members in their sole discretion.

9.     **Management.**   The Company will be member-managed, and the business and affairs of the Company will be managed by or under the direction of, and the right and power to act

for or to bind the Company will be vested exclusively in, the Members; provided, however, that the Members may appoint, remove, employ or otherwise contract with any persons (including but not limited to officers of the Company) for the transaction of the business of the Company or the performance of services for or on behalf of the Company, and the Members may delegate to any such persons such authority to act on behalf of the Company as the Members may from time to time deem appropriate.  Affairs of the Company shall require a majority vote in order to proceed unless otherwise required by this Agreement or by law.

10.    **Officers.**  The Members may (but need not) from time to time designate and appoint one or more persons as officers of the Company (each, an "Officer"; collectively, the "Officers"). No Officer need be a resident of the State of California.  Any Officers so designated shall have such authority and perform such duties as the Members may from time to time delegate to them. The Members may assign titles to particular Officers. Unless the Members otherwise decide, if the title is one commonly used for officers of a business corporation formed, the assignment of such title shall constitute the delegation to such Officer of the authority and duties that are normally associated with that office, subject to any specific delegation of authority and duties made to such Officer by the Members pursuant to the terms hereunder. Each Officer shall hold office until such Officer's successor shall be duly designated and shall qualify or until such Officer's death or until such Officer shall resign or shall have been removed in the manner hereinafter provided. Any number of offices may be held by the same individual. The salaries or other compensation, if any, of the Officers and agents of the Company shall be fixed from time to time by the Members.  Any Officer (subject to any contract rights available to the Company, if applicable) may resign as such at any time. Such resignation shall be made in writing and shall take effect at the time specified therein, or if no time is specified, at the time of its receipt by the Members. The acceptance of a resignation shall not be necessary to make it effective, unless expressly so provided in the resignation. Any Officer may be removed as such, either with or without cause, by the Members in their discretion at any time: provided, however, that such removal shall be without prejudice to the contract rights, if any, of the individual so removed. Designation of an Officer shall not of itself create contract rights. Any vacancy occurring in any office of the Company may be filled by the Members and shall remain vacant until so filled.

11.    **Events Giving Rise to Dissolution.**  The Company shall dissolve upon the first to occur of the following, and upon no other event or occurrence:

A.    the written election by the Members to dissolve the Company;

B.    any event which makes it unlawful for the business of the Company to be carried on;

C.    at any time there are no members; provided, however, that the Company is not dissolved and shall not be required to be wound up if, within ninety (90) days after the occurrence of the event that terminated the continued membership of the last remaining member, the representative of the last remaining member agrees in writing to continue the Company and to the admission of the personal

DocuSign Envelope ID: F6AD8584-895D-4912-AB48-1B3C690DE79B

representative of such member or its nominee or designee to the Company as a member, effective as of the occurrence of the event that terminated the continued membership of the last remaining member;

**D.** the entry of a decree of judicial dissolution under the Act; or

**E.** as otherwise specified under the Act.

12. **Amendments.** This Agreement may be amended only by written instrument executed by the Members.

13. **Limited Liability.** Except as otherwise provided by the Act, neither the Members nor any officer or employee of the Company will be personally liable for any debt, obligation, or liability of the Company, whether that liability or obligation arises in contract, tort, or otherwise, solely by reason of being a Member or an officer or an employee of the Company.

14. **Bank Accounts.** Each Member is authorized to endorse checks, drafts or other evidences of indebtedness made payable to the order of the Company. Only the Members are authorized to sign on behalf of the Company any check drawn on the Company account.

15. **Assignments.** The Members may not assign any of their limited liability company interest in the Company without the consent of the other.

16. **Exculpation and Indemnification.** To the fullest extent permitted by law, the Company will indemnify and hold harmless each Member, and each officer, employee or other agent of the Company and the Member who was or is a party or is threatened to be made a party to any threatened, pending, or completed action, suit or proceeding, whether civil, criminal, administrative, or investigative, by reason of any act or omission or alleged act or omission arising out of such person's activities as a member, officer, employee or other agent or otherwise on behalf of the Company if such activities were performed in good faith either on behalf of the Company or in furtherance of the interests of the Company, and were performed or omitted in a manner reasonably believed by such person to be within the scope of the authority conferred by this Agreement, by law against losses, damages, or expenses for which such person has not otherwise been reimbursed (including, without limitation, attorneys and accountant fees and expenses, judgment fines and amounts paid in settlement), actually and reasonably incurred by such person in connection with such action, suit or proceeding, so long as such person was not guilty of gross negligence or willful misconduct with respect to such act or omission.

17. **Rights of Legal Representatives.** If a Member who is an individual dies or is adjudged by a court of competent jurisdiction to be incompetent to manage such Member's person or property, such Member's executor, administrator, guardian, conservator or other legal representative may exercise all of such Member's rights for the purposes of settling the member's estate or administering such Member's property, including any right such Member may have under this Agreement to give an assignee the right to become a Member. If a Member is a corporation, trust or other entity and is dissolved or terminated, the powers of that Member may be exercised by his or her legal representatives.

DocuSign Envelope ID: F6AD85B4-895D-4912-AB48-1B3C690DE79B

18.   **Governing Law; Jurisdiction**.  This Agreement and the rights of the parties hereunder shall be governed by and interpreted in accordance with the laws of the State of California.

19.   **Entire Agreement.** This Agreement embodies the entire agreement and understanding of the Members hereto with respect to the subject matter hereof and supersedes all prior agreements and understandings relating to such matter.

*      *      *

**IN WITNESS WHEREOF,** the undersigned has executed this Operating Agreement as of the date first above written.

**MEMBERS**:

By: _____
Name: Joshua Richards

By: _____
Name: Michael Gruen

[Signature Page to Operating Agreement – CrossCheck Studios, LLC]

## SCHEDULE A

| **Name** | **Interest** |
|---|---|
| Joshua Richards | 50.01% |
| Michael Gruen | 49.99% |
| **TOTAL:** | **100.00%** |

DocuSign Envelope ID: E01D9A21-9D2C-495E-AFF1-2FAB936E5163

**FIRST AMENDMENT
TO
OPERATING AGREEMENT
OF
CROSSCHECK STUDIOS, LLC**

THIS FIRST AMENDMENT TO OPERATING AGREEMENT (this "**Amendment**") is effective as of the close of business on October 25, 2021, and is made with reference to CROSSCHECK STUDIOS, LLC, a California limited liability company (the "**Company**"). This Amendment is being made by all of the Members of the Company.

**RECITALS**

A.      Ownership of all Membership Interests in the Company is governed by that certain Operating Agreement of the Company made effective as of February 18, 2021 (the "**Operating Agreement**"). Any capitalized terms used in this Amendment which are not otherwise defined shall have the meanings ascribed to them in the Operating Agreement.

B.      Pursuant to that certain Services Agreement dated October 25, 2021, Chris Sawtelle ("**Sawtelle**") is acquiring a Membership Interest in the Company (the "**Sawtelle Issued Interest**") in consideration of services to be rendered by Sawtelle or an entity under his control.

C.      Pursuant to that certain Services Agreement dated September 30, 2021, Jared Sleisenger ("**Sleisenger**") is acquiring a Membership Interest in the Company (the "**Sleisenger Issued Interest**" and, together with the Sawtelle Issued Interest, the "**Issued Interests**" and each an "**Issued Interest**") in consideration of services to be rendered by Sleisenger.

D.      The Members wish to amend the Operating Agreement in order to, among other things, (a) recognize each of Sawtelle and Sleisenger as a member of the Company, (b) provide for certain amendments to the Operating Agreement, and (c) set forth the Company's updated capital structure after the issuance of the Issued Interests.

Accordingly, the Members hereby agree as follows:

1.      **CONSENT TO AND APPROVAL OF TRANSFER AND ASSIGNMENT OF THE INTEREST AND OF ADMISSION OF NEW MEMBERS**. By their signatures on this Amendment, the Members hereby consent to and approve of: (i) the issuance of the Issued Interests to, and receipt of the same by, Sawtelle and Sleisenger of the applicable Issued Interest as set forth above in the Recitals hereto, and (ii) the admission of the Sawtelle and Sleisenger as a Member of the Company. Accordingly, effective as of the date hereof, Sawtelle and Sleisenger shall each be deemed a Member, and in such capacity, shall have all of the rights, privileges and powers incident to ownership of the applicable Issued Interest granted and issued to Sawtelle and Sleisenger (including, subject to the vesting rights attached to such Issued Interest, the right to vote the applicable Issued Interest, the right to participate in the management of the Company, the right to access and receive information regarding the Company, and the right to the economic interest relating to such Issued Interest), and shall assume, fulfill and be bound by all of the duties,

responsibilities, liabilities and restrictions incident to ownership of the applicable Issued Interest, whether arising under the Operating Agreement, at law or otherwise.

2. **AMENDMENT TO SCHEDULE A**.  Schedule A of the Operating Agreement is hereby deleted in its entirety and restated as follows:

| **Member** | **Percentage Interest** |
|---|---|
| JOSHUA RICHARDS | 38.758% |
| MICHAEL GRUEN | 38.742% |
| CHRIS SAWTELLE | 20% |
| JARED SLEISENGER | 2.5% |

3. AMENDMENT TO SECTION 9.  Section 9 of the Operating Agreement is amended and restated as follows:

"The Company will be managed by the Members.  Accordingly, the Company's business and affairs shall be managed by, and all the Company's powers shall be exercised by and under the joint direction and authority of, the Members, acting by majority vote, except with respect to the Major Decisions set forth below, which shall require the consent of eighty-five percent (85%) of the interests of the Members (such percentage being the "Major Decision Threshold".  The Members may delegate some or all of the management of the Company's day-to-day operations to any Person, provided that all such Persons shall be subject to the Members' direction.  No specific grant of authority to the Members in other sections of this Agreement shall limit the power and authority granted to the Members in this Section 9.  No provisions of the Act regarding the presence or absence of a quorum at a meeting of the Members shall affect the determination of whether the proper vote, consent or approval of the Members has been obtained.  Notwithstanding anything else to the contrary in the Act, any matter requiring the Members' vote, consent or approval under this Agreement shall require, as applicable, the Members' majority approval or the Members' Major Decision Threshold approval. Any action required to be taken by the Members may be taken without a meeting, without prior notice and without a tallied vote, if a consent in writing, setting forth the action so taken, shall be signed by the Members required to approve such action in accordance with the terms herein. Prompt notice of any action by written consent of the Members constituting pursuant to this Section 9 shall be given to the Members constituting the percentage interest in the Company needed to consent to the particular decision (i.e. either a simple majority of the Members or an interest constituting the Major Decision Threshold).

For purposes of this Agreement, "Major Decisions" shall mean any of the actions set forth immediately below:

(i) Amend this Agreement, the Articles or any of the Company's other organizational or governing documents;

(ii) Admit new Members to the Company, or cause the Company to issue additional membership interests to any third party or to an existing Member;

(iii)    Undertake any act that would cause a change in the Members' percentage interests;

(iv)    Approve any transfer of all or any portion of a Member's interest;

(v)    Set, increase or decrease the compensation payable to a Member, affiliate of a Member, or principal or related party of either;

(vi)    Notwithstanding § 17704.09 of the Act, enter into any business transaction or arrangement with a Member, any entity with which a Member is a principal, or a related party to any of the foregoing Persons, which is not in the ordinary course and conduct of the Company's business;

(vii)    Guarantee, assume, acquire or otherwise become liable for any liability, indebtedness or obligation of any other party;

(viii)    Mortgage, pledge or otherwise encumber any assets of the Company;

(ix)    Sell, lease, exchange, or otherwise dispose of all, or substantially all, of the Company's assets or properties, with or without the goodwill, which is <u>not</u> in the ordinary course and conduct of the Company's business, whether as part of a single transaction or plan or in multiple transactions, except in the orderly liquidation and winding up of the business of Company upon its duly authorized dissolution;

(x)    Cause, permit or approve the merger or consolidation of the Company with another entity;

(xi)    Cause, permit or approve the conversion of the Company into another form of business entity; and

(xii)    Cause, permit or approve the dissolution or liquidation of the Company.

4.    **FULL FORCE AND EFFECT**.  Except as amended by this Amendment, the Operating Agreement shall remain in full force and effect; <u>provided</u>, <u>however</u>, that wherever any term or provision of this Amendment conflicts with any term or provision of the Operating Agreement, the term or provision of this Amendment shall be deemed to supersede the conflicting term or provision of the Operating Agreement.

IN WITNESS WHEREOF, the Members have executed this Amendment as of the date first above written.

JOSHUA RICHARDS

MICHAEL GRUEN

EXHIBIT B

## CONFIDENTIAL SETTLEMENT AND RELEASE AGREEMENT

This Confidential Settlement and Release Agreement ("Agreement") is made, and entered into as of June 9, 2022 ("Effective Date"), by and between Michael Gruen ("Gruen"), on the one hand, and Josh Richards ("Richards"), Chris Sawtelle ("Sawtelle"), and Jared Sleisenger ("Sleisenger"), on the other hand (collectively, the "Parties").

WHEREAS, on February 18, 2021, Gruen and Richards entered into the Operating Agreement of Crosscheck Studios, LLC ("Crosscheck"), a California limited liability company ("Operating Agreement"). Under the Operating Agreement, Gruen held 49.99% membership interest in Crosscheck; Richards held 50.01% membership interest in Crosscheck.

WHEREAS, on October 21, 2021, the Operating Agreement was amended by the First Amendment to Operating Agreement of Crosscheck Studios, LLC ("Amended Operating Agreement"). The Amended Operating Agreement added two members to Crosscheck, Chris Sawtelle and Jared Sleisenger, which changed the ownership of membership interest of the Parties as follows: Gruen holds 38.742% membership interest in Crosscheck; Richards holds 38.758% membership interest in Crosscheck.

WHEREAS, various disputes arose between the Parties concerning their respective rights and obligations relating to Crosscheck.

WHEREAS, without making any admissions of liability and solely to avoid the cost and uncertainty of further litigation, the Parties to this Agreement now desire to fully and finally resolve all disputes of any nature, including without limitation disputes in connection to Crosscheck.

1.1    Non-Admission of Liability. The Parties acknowledge that this Agreement is entered into in compromise of disputed claims and that neither its execution nor the payment of consideration thereunder is or shall be deemed or construed in any way as an admission of wrongdoing or liability, express or implied by any party, and that this Agreement may not be introduced into evidence as an admission of wrongdoing by any person.

1.2    Buy-Out Amount. Upon Gruen (or his attorney) delivering a signed copy of this Agreement to Richards' attorney Jeremiah Reynolds, and in consideration for the total sum of Ninety Thousand Dollars ($90,000) ("Buy-Out Amount") to be paid by Richards, Gruen irrevocably assigns to Richards all of Gruen's right, title, and interest pursuant to terms of the Assignment and Assumption of Membership Interest of Crosscheck Studios, LLC (Exhibit A), and irrevocably relinquishes all of his right, title, and interest in any affiliated entity including without limitation Crosscheck Sports, LLC. Nothing in this agreement shall be construed as Gruen transferring or relinquishing any equity interest in any entity other than CrossCheck Studios, LLC or CrossCheck Sports, LLC. The Parties acknowledge that their respective interests in Ani Energy and Animal Capital will not be affected by this agreement.

The Buy-Out Amount shall be payable to Michael Gruen within 30 (thirty) days of Gruen's delivery of a signed copy of this Agreement to Jeremiah Reynolds. Gruen will provide payment instructions to Jeremiah Reynolds concurrently with delivering a signed copy of this Agreement.

1.3     <u>Dinner.</u>   Upon full execution of this Agreement, Richards and Gruen will in good faith endeavor to have dinner, provided that the good faith failure to have a dinner due to scheduling or other logistical issues shall not be deemed to be a breach of this Agreement.

1.4     <u>Release by Gruen.</u>  Michael Gruen, on behalf of himself and his respective members, shareholders, partners, subsidiaries, affiliates, agents, officers, directors, attorneys, employees, representatives, assignors, insurers, heirs, and assigns, hereby fully and forever releases and discharges Richards, Sawtelle, Sleisenger, and Crosscheck and its respective members, shareholders, partners, subsidiaries, affiliates, agents, officers, directors, attorneys, employees, representatives, assignors, insurers, heirs, assigns (collectively, the "Richards Released Parties"), from any and all charges, complaints, claims, causes of action, liabilities of any kind, rights, obligations, accountings, or damages, whether known or unknown, suspected or unsuspected, and whether or not concealed or hidden of any nature ("Richards Released Claims").  Notwithstanding the foregoing, nothing in this release shall release obligations under the Agreement or prevent the Parties from enforcing any term of this Agreement.

<u>Release by the Richards Parties.</u>  Richards, Sawtelle, and Sleisgenger on behalf of themselves, Crosscheck, and their respective members, shareholders, partners, subsidiaries, affiliates, agents, officers, directors, attorneys, employees, representatives, assignors, insurers, heirs, and assigns, hereby fully and forever releases and discharges Gruen and his respective members, shareholders, partners, subsidiaries, affiliates, agents, officers, directors, attorneys, employees, representatives, assignors, insurers, heirs, assigns (collectively, the "Gruen Released Parties"), from any and all charges, complaints, claims, causes of action, liabilities of any kind, rights, obligations, accountings, or damages, whether known or unknown, suspected or unsuspected, and whether or not concealed or hidden of any nature ("Gruen Released Claims"). Notwithstanding the foregoing, nothing in this release shall release obligations under the Agreement or prevent the Parties from enforcing any term of this Agreement.

Notwithstanding the foregoing, nothing in this release shall release obligations under this Agreement or prevent any party from enforcing any term of this Agreement. Further, nothing in this agreement shall be construed as altering Paragraph 16 of the original Operating Agreement for CrossCheck Studios, LLC, which requires indemnification of Members. The parties acknowledge that Gruen, as a former member of CrossCheck Studios, LLC, would continue be covered by this section of the original Operating Agreement.

1.5     <u>Waiver and Relinquishment of California Civil Code section 1542.</u>  The parties intend to release each other from all claims known and unknown. The Parties acknowledge that they have read and are aware of the provisions of Section 1542 of the California Civil Code, that their attorneys have fully explained the effect of their waiver of the rights and benefits of section 1542, and that they understand said provisions and expressly waive and relinquish all rights and benefits they have or may have under this section, which reads as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

2

Except as otherwise specifically set forth in this Agreement, the Parties waive any and all rights they have or may have under Section 1542, and/or any equivalent provision of law or successor statute to it, with respect to the Gruen Released Claims and Richards Released Claims (collectively, the "Released Claims"). In connection with this waiver, the Parties acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true, with respect to Released Claims. The Parties acknowledge that the releases set forth in this Agreement shall be and shall remain in effect as full and complete releases notwithstanding the discovery or existence of any such additional or different claims or facts relevant hereto.

1.6    Representations and Warranties.  Each Party hereby represents and warrants that: (i) it is the sole rightful owner of and has not encumbered, assigned, or transferred, nor will it in the future attempt to encumber, assign, or transfer, any claim or cause of action released herein; (ii) it has not filed with any governmental agency or court any type of action or report against the other Party, and currently knows of no existing act or omission by the other Party that may constitute a claim or liability excluded from the claims released herein; and (iii) it has full authority to enter into, deliver, and perform under this Agreement, and that all acts and actions have been taken to grant such authority, and that no third-party consent, which has not already been obtained, is required.

1.7    Covenant Not to Sue.  In consideration for the promises set forth herein, the Parties covenant, on behalf of themselves and their heirs, successors and assigns, to the fullest extent permitted by governing law, that following the execution of the Agreement, they will not file, participate in, or instigate the filing of any lawsuits, complaints, or charges in any state or federal court or any proceedings before any local, state, or federal agency, except under legal compulsion, asserting any of the Released Claims. This covenant shall not be deemed to apply or construed to apply to any administrative proceeding or government enforcement action the future participation in which is not waivable by an individual as a matter of governing law.

1.8    Confidentiality.  The Parties and their attorneys agree that they will keep this Agreement confidential and any of the negotiations preceding or following it, as to any third party, except: (a) with the prior written consent of the other party; (b) pursuant to an order of court or other governmental body having jurisdiction to issue such order, in which event the party subject to the order shall notify the other party immediately upon receipt of such an order and prior to any such disclosure; (c) to the Parties' tax advisors, accountants, auditors, prospective purchasers, investors, prospective investors, insurers, or reinsurers; or (d) as may be necessary for any Party to establish or enforce rights under this Agreement. If asked about settlement of this Agreement by any others, the Parties or their counsel may state that the Parties have "amicably resolved all differences," provided, however, that in so doing, the Parties shall not disclose the fact or amount of any payments made or to be made hereunder and shall not disclose any other terms of this Agreement. The Parties further agree that they will not make any statements in reference to this Agreement or any legal claims between the Parties, real or imagined, on any public forum, even if such statements do not mention any Party or business entity by name. The Parties acknowledge that this confidentiality provision is a material term of this Agreement and that the non-breaching party will be entitled to actual and provable damages for any breach of it.

3

1.9    <u>Mutual Non-Disparagement.</u>  The Parties agree not to make disparaging remarks about the other in any forum, including but not limited to social media.  The Parties agree that they will no longer claim present affiliation with each other. The Parties may make truthful, non-disparaging statements about their current and past individual company ownership, as well as professional and work histories, though the parties must adhere to the specific confidentiality requirements in Section 1.8 regarding this agreement and the underlying dispute.  For purposes of this Agreement, "disparaging" means having a reasonable possibility of causing damage to reputation.

2.0    <u>Governing Law.</u>  This Agreement is made in, and shall be governed by, construed and enforced in accordance with the laws of the State of California, without regard to any choice of law principles.

2.1    <u>Benefit and Burden.</u>  This Agreement shall be binding upon and inure to the benefit of the Parties, as well as their respective heirs, representatives, successors and assigns.

2.2    <u>Waiver and Amendment.</u>  No breach of any provision hereof can be waived except by a writing executed by all of the Parties to this Agreement. Waiver of any breach shall not be deemed to be a waiver of any other breach of the same or any other provisions hereof. This Agreement may not be modified, amended, supplemented or terminated except by a written agreement executed by the Parties in interest at the time of amendment.

2.3    <u>Construction and Headings.</u> This Agreement has been prepared based on the joint efforts of the Parties. This Agreement is to be construed simply and fairly and not strictly for or against any of the Parties. The paragraph headings contained in this Agreement are for convenience only and shall not be considered for any purpose in construing this Agreement. No provision in this Agreement is to be interpreted for or against either Party because that Party or its legal representative drafted such provision.

2.4    <u>Entire Agreement.</u> This Agreement constitutes the entire understanding and agreement of the Parties with respect to the subject matter of this Agreement, and it supersedes and replaces all prior discussions, offers, negotiations, proposed agreements and agreements related to the subject matter of this Agreement. Each of the Parties acknowledges that no other party, nor any agent, representative or attorney of any other party, has made any promise, agreement, covenant, representation or warranty whatsoever, express or implied, concerning the subject matter of this Agreement that is not contained in this Agreement.

2.5    <u>Independent Advice of Counsel.</u> Each of the Parties represents and declares that in executing this Agreement he/she/it has relied solely upon its own judgment, belief and knowledge, and the advice and recommendations of its own independently selected counsel, concerning the nature, extent and duration of its rights and claims, or had the opportunity to consult their own independently selected counsel. The Parties acknowledge that they have executed this Agreement without fraud, duress or undue influence.

2.6    <u>Severability.</u>  Should any provision in this Agreement conflict with governing law, the Parties agree that such provision is severable from the remainder, such that the remainder shall remain binding and enforceable to the full extent permitted by law.

2.7     <u>Counterparts and Faxed/Scanned/Emailed Signatures.</u> This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall constitute together one and the same instrument. Facsimile or scanned email signatures may be used and shall be deemed original signatures.

IN WITNESS WHEREOF, each of the Parties do hereby execute this Agreement by affixing their respective signatures thereto.

Michael Gruen

Sign: _____
        Michael Gruen

Date: _____

Josh Richards

Sign: *Josh Richards*
        Josh Richards (Jun 13, 2022 14:19 PDT)
        Josh Richards

Date: Jun 13, 2022

Chris Sawtelle

Sign: _____
        Chris Sawtelle (Jun 13, 2022 14:23 PDT)
        Chris Sawtelle

Date: Jun 13, 2022

Jared Sleisenger

Sign: *Jared Sleisenger*
        Jared Sleisenger (Jun 13, 2022 18:16 EDT)
        Jared Sleisenger

Date: Jun 13, 2022

5

6

**SSIGNMENT AND ASSUMPTION OF MEMBERSHIP INTEREST**
**OF**
**CROSSCHECK STUDIOS, LLC**

      **THIS ASSIGNMENT AND ASSUMPTION OF MEMBERSHIP INTEREST** ("Assignment") is made as of June 9, 2022 ("Effective Date"), by and between Michael Gruen ("Assignor"), and Josh Richards ("Assignee").

**RECITALS:**

      A.    Assignor owns 38.742% Membership Interest in Crosscheck Studios, LLC, a California limited liability company ("Crosscheck").

      B.    Assignor desires to assign to Assignee the entirety of Assignor's Membership Interest in Crosscheck in consideration for $90,000 ("Buy-Out Amount"), and Assignee desires to accept from Assignor, the entirety of Membership Interest presently held by Assignor in Crosscheck.

**AGREEMENT:**

      In consideration of the foregoing recitals and other good and valuable consideration, the parties agree as follows:

      1.    **Assignment**.  Assignor hereby assigns, transfers, delivers and conveys to Assignee all of his Membership Interest in Crosscheck ("Assignor's Membership Interest").  Following the Effective Date of this Assignment, Assignor shall have no further membership interest in Crosscheck and Assignee shall be entitled to exercise all rights and receive all benefits associated with Assignor's Membership Interest.

      2.    **Assumption**.  Assignee hereby accepts the foregoing assignment and assumes the liabilities and obligations of Assignor as a Member of the Company in accordance with Assignor's Membership Interest.

      3.    **Representations and Warranties**.  Assignor hereby represents and warrants to Assignee that he has not previously assigned, transferred or sold Assignor's Membership Interest, and that there are no liens, claims or encumbrances of any nature burdening Assignor's Membership Interest.

      4.    **Further Actions.**  Each of the parties hereby covenants and agrees, as his own expense, to execute and deliver, and cause to be executed and delivered, at the request of the other party, such further instruments of transfer and assignment and to take or cause to be taken such other action as such other party may reasonably request to more effectively consummate the assignment and assumption contemned in this Assignment.

      5.    **Counterparts**.  This Assignment may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute the same instrument.

Assignor and Assignee have executed this Assignment as of the Effective Date.

**ASSIGNOR:**

Michael Gruen

By: _____
Name: _____
Its: _____

Assignor and Assignee have executed this Assignment as of the Effective Date.

**ASSIGNEE:**

Josh Richards

By: *Josh Richards*
    Josh Richards (Jun 13, 2022 14:19 PDT)
Name: Josh Richards
Its: Self

The other Members hereby consent to this Assignment as of the Effective Date.

**MEMBER:**

Chris Sawtelle

By: CS
    Chris Sawtelle (Jun 13, 2022 14:23 PDT)
Name: Chris Sawtelle
Its: Self

**MEMBER:**

Jared Sleisenger

By: *Jared Sleisenger*
    Jared Sleisenger (Jun 13, 2022 18:16 EDT)
Name: Jared Sleisenger
Its: Self

#2801033v1

# Crosscheck Studios LLC | Settlement

Final Audit Report                                                    2022-06-13

| | |
|---|---|
| Created: | 2022-06-10 |
| By: | Esteban Di Masi (edm@atorieadvisors.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAGiLZktGr6MsIYVPTjPz3PB6H4P73noO6 |

## "Crosscheck Studios LLC | Settlement" History

Document created by Esteban Di Masi (edm@atorieadvisors.com)
2022-06-10 - 0:17:38 AM GMT

Document emailed to Josh Richards (josh@crosscheckstudios.com) for signature
2022-06-10 - 0:19:45 AM GMT

Email viewed by Josh Richards (josh@crosscheckstudios.com)
2022-06-10 - 0:21:58 AM GMT

Document e-signed by Josh Richards (josh@crosscheckstudios.com)
Signature Date: 2022-06-13 - 9:19:55 PM GMT - Time Source: server

Document emailed to Chris Sawtelle (chris@crosscheckstudios.com) for signature
2022-06-13 - 9:19:57 PM GMT

Email viewed by Chris Sawtelle (chris@crosscheckstudios.com)
2022-06-13 - 9:22:17 PM GMT

Document e-signed by Chris Sawtelle (chris@crosscheckstudios.com)
Signature Date: 2022-06-13 - 9:23:21 PM GMT - Time Source: server

Document emailed to Jared Sleisenger (jared@crosscheckstudios.com) for signature
2022-06-13 - 9:23:22 PM GMT

Email viewed by Jared Sleisenger (jared@crosscheckstudios.com)
2022-06-13 - 9:23:24 PM GMT

Document e-signed by Jared Sleisenger (jared@crosscheckstudios.com)
Signature Date: 2022-06-13 - 10:16:49 PM GMT - Time Source: server

Agreement completed.
2022-06-13 - 10:16:49 PM GMT



EXHIBIT C

651121

| | |
|---|---|
| ☐ Final K-1 | ☐ Amended K-1 |

OMB No. 1545-0123

**Schedule K-1**
**(Form 1065)**
Department of the Treasury
Internal Revenue Service

**2021**

For calendar year 2021, or tax year

beginning ___/___/ 2021   ending ___/___/___

**Partner's Share of Income, Deductions, Credits, etc.**
► See separate instructions.

## Part I   Information About the Partnership

**A** Partnership's employer identification number

**B** Partnership's name, address, city, state, and ZIP code

CROSSCHECK STUDIOS LLC
1158 26TH STREET STE 250
SANTA MONICA, CA 90403

**C** IRS center where partnership filed return ►OGDEN, UT

**D** ☐ Check if this is a publicly traded partnership (PTP)

## Part II   Information About the Partner

**E** Partner's SSN or TIN (Do not use TIN of a disregarded entity. See instructions.)

**F** Name, address, city, state, and ZIP code for partner entered in E. See instructions.

MICHAEL GRUEN

**G** ☒ General partner or LLC member-manager   ☐ Limited partner or other LLC member

**H1** ☒ Domestic partner   ☐ Foreign partner

**H2** ☐ If the partner is a disregarded entity (DE), enter the partner's:
TIN _____   Name _____

**I1** What type of entity is this partner?   INDIVIDUAL

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ► ☐

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | % | % |
| Loss | % | % |
| Capital | % | % |

Check if decrease is due to sale or exchange of partnership interest ► ☐

**K** Partner's share of liabilities:

| | Beginning | Ending |
|---|---|---|
| Nonrecourse | $ | $ |
| Qualified nonrecourse financing | $ | $ |
| Recourse | $ | $ |

Check this box if Item K includes liability amounts from lower tier partnerships ► ☐

**L** **Partner's Capital Account Analysis**

| | |
|---|---|
| Beginning capital account | $ 0. |
| Capital contributed during the year | $ |
| Current year net income (loss) | $ 100,187. |
| Other increase (decrease) (attach explanation) | $ |
| Withdrawals and distributions | $( 15,000.) |
| Ending capital account | $ 85,187. |

**M** Did the partner contribute property with a built-in gain (loss)?
☐ Yes   ☒ No   If "Yes," attach statement. See instructions.

**N** Partner's Share of Net Unrecognized Section 704(c) Gain or (Loss)
Beginning ........ $
Ending ........ $

## Part III   Partner's Share of Current Year Income, Deductions, Credits, and Other Items

| | | | |
|---|---|---|---|
| 1 | Ordinary business income (loss) 100,187. | 14 | Self-employment earnings (loss) A _____ 100,187. |
| 2 | Net rental real estate income (loss) | | |
| 3 | Other net rental income (loss) | 15 | Credits |
| 4a | Guaranteed payments for services | | |
| 4b | Guaranteed payments for capital | 16 | Schedule K-3 is attached if checked ........ ► ☐ |
| 4c | Total guaranteed payments | 17 | Alternative minimum tax (AMT) items |
| 5 | Interest income | | |
| 6a | Ordinary dividends | | |
| 6b | Qualified dividends | 18 | Tax-exempt income and nondeductible expenses |
| 6c | Dividend equivalents | | |
| 7 | Royalties | | |
| 8 | Net short-term capital gain (loss) | 19 | Distributions |
| 9a | Net long-term capital gain (loss) | | A _____ 15,000. |
| 9b | Collectibles (28%) gain (loss) | 20 | Other information |
| 9c | Unrecaptured section 1250 gain | | Z* STMT |
| 10 | Net section 1231 gain (loss) | | |
| 11 | Other income (loss) | | |
| 12 | Section 179 deduction | 21 | Foreign taxes paid or accrued |
| 13 | Other deductions | | |

22 ☐ More than one activity for at-risk purposes*
23 ☐ More than one activity for passive activity purposes*
*See attached statement for additional information.

*For IRS Use Only*

DRAFT

**BAA For Paperwork Reduction Act Notice, see the Instructions for Form 1065.**   www.irs.gov/Form1065   **Schedule K-1 (Form 1065) 2021**

PTPA0312L   08/11/21

**Statement A—QBI Pass-through Entity Reporting (Schedule K-1, Box 20, Code Z)**

| Partnership's name: CROSSCHECK STUDIOS LLC | | | Partnership's EIN: ▮▮▮▮▮▮ |
|---|---|---|---|
| Partner's name:   MICHAEL GRUEN | | | Partner's identifying number: |

| | CROSSCHECK STUDIOS LLC | | |
|---|---|---|---|
| | ☐ PTP | ☐ PTP | ☐ PTP |
| | ☐ Aggregated | ☐ Aggregated | ☐ Aggregated |
| **Partner's share of:** | ☐ SSTB | ☐ SSTB | ☐ SSTB |
| **QBI or qualified PTP items subject to partner-specific determinations:** | | | |
| Ordinary business income (loss) | 100,187. | | |
| Rental income (loss) . . . . . . . . . . | | | |
| Royalty income (loss) . . . . . . . . . | | | |
| Section 1231 gain (loss). . . . . . . | | | |
| Other income (loss). . . . . . . . . . . | | | |
| Section 179 deduction. . . . . . . . . | | | |
| Other deductions . . . . . . . . . . . . | | | |
| **W-2 wages**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | |
| **UBIA of qualified property** . . . . . . . . . . . . . . . . | | | |
| **Section 199A dividends** | | | |

| | | | |
|---|---|---|---|
| | ☐ PTP | ☑ PTP | ☐ PTP |
| | ☐ Aggregated | ☐ Aggregated | ☐ Aggregated |
| **Partner's share of:** | ☐ SSTB | ☐ SSTB | ☐ SSTB |
| **QBI or qualified PTP items subject to partner-specific determinations:** | | | |
| Ordinary business income (loss) | | | |
| Rental income (loss) . . . . . . . . . . | | | |
| Royalty income (loss) . . . . . . . . . | | | |
| Section 1231 gain (loss). . . . . . . | | | |
| Other income (loss). . . . . . . . . . . | | | |
| Section 179 deduction. . . . . . . . . | | | |
| Other deductions . . . . . . . . . . . . | | | |
| **W-2 wages**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | |
| **UBIA of qualified property** . . . . . . . . . . . . . . . | | | |

DRAFT

PARTNER 2
**BAA  For Paperwork Reduction Act Notice, see the Instructions for Form 1065.**   PTPA1515   06/09/21   **Statement A (Form 1065) (2021)**