JEREMIAH REYNOLDS (SBN 223554)
jreynolds@eisnerlaw.com
ZACHARY ELSEA (SBN 279252)
zelsea@eisnerlaw.com
ELAINE LI (SBN 333529)
eli@eisnerlaw.com
EISNER, LLP
433 N. Camden Dr., 4th Floor
Beverly Hills, California 90210
Telephone: (310) 855-3200
Facsimile: (310) 855-3201

Attorneys for Defendants
JOSHUA RICHARDS; CHRISTOPHER
SAWTELLE; CROSSCHECK STUDIOS,
LLC; and BUDDY'S HARD, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL GRUEN,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>JOSHUA RICHARDS, an individual;<br>CHRISTOPHER SAWTELLE, an<br>individual; CROSSCHECK STUDIOS,<br>LLC, a California limited liability<br>company; BUDDY'S HARD, LLC, a<br>Delaware limited liability company; and<br>DOES 1 through 100, inclusive,<br><br>　　　　Defendants. | Case No. 2:24-cv-01777-AB-SSC<br><br>*Hon. André Birotte Jr.*<br><br>**DEFENDANTS JOSHUA RICHARDS, CHRISTOPHER SAWTELLE, CROSSCCHECK STUDIOS, LLC AND BUDDY'S HARD, LLC'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. RULE 12(B)(6);**<br><br>Judge:　Hon. André Birotte Jr.<br>Date:　July 12, 2024<br>Time:　10:00 a.m.<br>Crtrm.:　8D<br><br>Trial Date:　　　None Set |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................ 1

II.   THE SETTLEMENT AGREEMENT BARS THE RESCISSION
CLAIM ...................................................................................................... 1

    A.    The Releases Bar Gruen's Fraud Claim As A Matter Of Law. ............. 1

    B.    Gruen's Attempt To Recast The Settlement As A "Buyout"
Between Fiduciaries Is Completely Frivolous. ..................................... 5

III.  THE LITIGATION PRIVILEGE APPLIES ........................................... 7

    A.    Attorney Demand Letters And Responses Thereto Are Privileged
As A Matter Of Law. ............................................................................ 7

IV.  THE ALLEGED FRAUD IS PREDICATED ON STATEMENTS
PROTECTED BY CALIFORNIA'S MEDIATION PRIVILEGE ................ 11

V.   THE FAC FAILS TO ALLEGE UNCONSCIONABILITY, UNDUE
INFLUENCE, AND FAILED CONSIDERATION ...................................... 12

    A.    Unconscionability ............................................................................... 12

    B.    Undue Influence .................................................................................. 13

    C.    Failed Consideration ........................................................................... 13

VI.  THE SECOND CLAIM FOR BREACH OF CONTRACT FAILS .............. 14

VII. PLAINTIFF'S WAGE CLAIM FAILS ......................................................... 15

EISNER, LLP

2873263

i

DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS

## I.    INTRODUCTION

Plaintiff Michael Gruen seeks to rescind a settlement agreement that he entered into **solely** at the advice of his independent litigation counsel, following a full mediation with a retired judge.  The settlement agreement, dated June 9, 2022, ("Settlement Agreement"), contains specific representations and promises as a result of extensive negotiations by the parties' respective counsel, which were intended to ensure the settlement was final, binding, conclusive, and could not be later challenged by either side. The Settlement Agreement resolved the exact same disputes that Gruen now seeks to relitigate in this action.  Dkt. 29, p. 3, n. 2.

Gruen relies on the general proposition that a boilerplate integration clause or generic non-reliance disclaimer do not *per se* bar a fraud claim.  But Gruen fails to address or explain how his claims can proceed in light of the **specific** language and context of the Settlement Agreement upon which he seeks to rescind.  Nor could he. The misrepresentations Gruen alleges in the operative First Amended Complaint ("FAC") so explicitly contradict the language in the Settlement Agreement that any justifiable reliance is untenable as a matter of law.  Gruen cites **no case** where a court has allowed rescission of a settlement agreement with the language of this agreement and under the circumstances alleged in the FAC.  Indeed, if Gruen is allowed to proceed on his rescission claims, any settlement agreement is at risk of being undone by a party who later has "settler's remorse."

If Gruen has problems with the advice he was provided by his **own attorney** to settle, his remedy is a malpractice action against his former counsel and/or current law firm, which is the same firm that recommended the settlement.  He should not be permitted to renege on his binding settlement agreement because he now has "settler's remorse" two years later.

## II.    THE SETTLEMENT AGREEMENT BARS THE RESCISSION CLAIM

### A.    The Releases Bar Gruen's Fraud Claim As A Matter Of Law.

As demonstrated in the Motion, the express and specific language of the

1  Settlement Agreement precludes Gruen from rescinding the Settlement Agreement

2  on the grounds alleged in the FAC.  Ignoring the specific and express language of

3  the Settlement Agreement, the Opposition relies on cases for the proposition that a

4  generic clause disclaiming reliance on representations outside of the agreement will

5  not *per se* bar a claim for fraud.  But this does not dispense with courts' analysis of

6  the particular facts and language of the settlement agreement ***in each case***.  Gruen's

7  overbroad argument fails to recognize that courts will determine the merits of claims

8  at issue by separately analyzing ***the context and specific wording*** of a contract.

9  Thus, Defendants' cited cases holding that reliance on alleged misrepresentations is

10  unreasonable and unjustifiable "***as a matter of law***" where, as here, the settlement

11  agreement expresses the parties' intention to 'fully, finally and forever ... settle and

12  release' all matters . . . .", the parties assume the risk of unknown or concealed facts,

13  and waive the right to bring later discovered claims at the advice independent

14  counsel. *Lancer Offshore, Inc. v. Dominion Income Management Corp.*, 2002 WL

15  441309 *4-5 (S.D.N.Y. Mar. 20, 2002) (emphasis added).

16       The misrepresentations Gruen alleges in the FAC so clearly contradict the

17  language in the Settlement Agreement that any justifiable reliance is untenable as a

18  matter of law. Gruen alleges that he "justifiably relied" on ***opposing counsel***'s

19  representations in pre-settlement correspondence in deciding to enter the Settlement

20  Agreement.  Dkt. 29, ¶ 117.  But Gruen expressly represented to Defendants under

21  the Settlement Agreement that he was ***not*** relying on any representations of

22  opposing counsel: "[e]ach of the Parties ***represents and declares*** that in executing

23  this Agreement he/she/it has relied ***solely*** upon its own judgment, belief and

24  knowledge, and the advice and recommendations of ***its own independently selected***

25  ***counsel***, concerning the nature, extent and duration of its rights and claims . . . ."

26  Dkt. 29-1, p. 15; *see also Id.* §2.4 ("Each of the Parties acknowledges that no other

27  party, nor any agent, representative or attorney of any other party, has made any

28  promise, agreement, covenant, representation or warranty whatsoever, express or

1   implied, concerning the subject matter of this Agreement that is not contained in this

2   Agreement.")  Now Gruen seeks to directly contradict these representations,

3   suggesting that he was committing fraud when he made those representations.

4          Gruen alleges the settlement was a "result of *undue influence,*

5   *fraud…unconscionability*" but said exactly the opposite in the Settlement

6   Agreement when he expressly represented to Defendants that the "Parties

7   acknowledge that they have executed this Agreement *without fraud, duress or*

8   *undue influence.*" Dkt. 29, ¶ 120; Dkt. 29-1, p. 15. Gruen further alleges

9   "*[u]unbeknownst* to him", his equity stake in Crosscheck was "worth more than 400

10  times the buyout" and that the Amazon deal was finalized "*unbeknownst* to Michael

11  [Gruen]". Dkt. 29, ¶¶11,16.  But Gruen represented in the Settlement Agreement

12  that the "Parties acknowledge that *their attorneys* have *fully explained* the effect of

13  their waiver of rights and benefits of section 1542" and agreed to waive the right to

14  assert claims "they may hereafter discover claims presently *unknown* or

15  unsuspected, *or facts* in addition to or *different* from those which they now know or

16  believe to be true". Dkt. 29-1, p.14.

17          This is identical to the fraud claim asserted by the plaintiff in *Lancer,* who

18  attempted to rescind a settlement agreement despite expressly representing they did

19  not rely on any representations made by the other party, and assumed "the risk of

20  any unknown or concealed facts or information", and waived Cal. Civ. Code section

21  1542.  The *Lancer* court held that "any alleged reliance on an outside statement

22  which *so clearly contradicts* the language in the Settlement and Release *is*

23  *unreasonable and not justified as a matter of law*." *Id.* 4. (emphasis added).  And

24  contrary to Gruen's assertion, *Lancer* is consistent with California law, which bars

25  rescission claims where express language "not merely a generic integration/no oral

26  representation clause" in the agreement disclaiming reliance render a plaintiff's later

27  alleged reliance unjustifiable.  *Hinesley v. Oakshade Town Center,* 35 Cal. App. 4th

28  289, 302 (2005) (citing *Driver*, 11 Cal. App. 3d. 752).

DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS

1    Gruen's attempt to distinguish from *Hinesley* (which held the tenant's alleged

2  reliance unjustifiable in part because the tenant failed to conduct due diligence),

3  precisely highlights Gruen's deficient pleading.  Like the plaintiff in *Hinesley* who

4  alleged certain businesses' tenancies in the plaza was important to him in entering

5  the lease, Gruen also alleges that Crosscheck's value driven by the Amazon deal

6  was "material" to Gruen's decision to enter the Settlement Agreement. *Id.* 299; Dkt.

7  29, ¶ 81. Also like the plaintiff in *Hinesley* who reviewed, but did not object to the

8  non-reliance provision, Gruen's attorney negotiated the specific settlement terms

9  with opposing counsel before agreeing to the final Settlement Agreement.  Dkt. 36-

10  8.  Also like the plaintiff in *Hinesley* who failed to independently verify

11  representations about "the contractual status of the three cotenants," Gruen also fails

12  to allege that either he or his attorney made any effort "to question, clarify, or

13  confirm" opposing counsel's supposed representations about the status of the

14  Amazon deal with Amazon or any third parties.

15    Any alleged reliance by Gruen is far ***more unreasonable*** than *Hinesley*

16  because (1) unlike parties negotiating a lease agreement, Gruen was threatening

17  litigation through Gruen's litigation attorney, who accused Defendants of diverting

18  profits, including profits from any contract with Amazon; (2) Gruen alleges he

19  relied on an ***opposing counsel***'s representations in prelitigation correspondence

20  rejecting Gruen's claims and explicitly threatening Gruen with litigation; (3) the

21  complete lack of due diligence by Gruen and his counsel to contact Amazon

22  regarding *opposing* counsel's alleged representation despite alleging he had an open

23  line of communication to Mike Hopkins who runs Amazon Studios and could

24  allegedly close a deal with Amazon "in three or four calls." .  Dkt. 29, ¶¶ 42, 54.

25    Given these circumstances, Gruen's argument that "the no-representations

26  clause in the instant action has none of the specificity of the reliance provision in

27  *Hinesley*", is utterly meritless.  Gruen's own allegations demonstrate that he

28  supposedly negotiated agreements with Amazon, could have easily contacted,

1    Amazon and could not plausibly have relied on a representation from opposing

2    counsel that did not even state that no contract had been reached with Amazon.

3           Accordingly, Gruen explicitly and knowingly waived all claims relating to the

4    value of Crosscheck, and such waiver is enforceable under California law.

5    **B.    Gruen's Attempt To Recast The Settlement As A "Buyout"**

6    **Between Fiduciaries Is Completely Frivolous.**

7           As explained in the Motion, Gruen's concession that he was represented by

8    his own litigation counsel during the negotiation of the Settlement Agreement with

9    adverse parties is also fatal to his claims. Case law holds that "[w]here a party is

10   represented by counsel, or where the alleged misrepresentation was made by an

11   adversary during the course of negotiations, ***courts have held that reliance is***

12   ***unjustifiable.***" *Borg v. Principal Life Ins. Co.*, 2008 WL 11453724, at *3 (N.D. Cal.

13   July 24, 2008) (emphasis added) (citation omitted); *Wilhelm v. Pray, Price,*

14   *Williams & Russell*, 186 Cal. App. 3d 1324 (1986)).[1]

15          Gruen labels the Settlement Agreement as a "buyout" in a misleading effort

16   to analogize to cases involving merger/acquisition commercial transactions where

17   misrepresentations were made by the managing members who are fiduciaries to the

18   passive members. Gruen cites to *Luciani v. Luciani,* No. 10-CV-2583-JM WVG,

19   2011 WL 3859707 (S.D. Cal. Sept. 1, 2011), but *Luciani* supports dismissal of

20   Gruen's fraud claim.  In allowing the limited partners' fraud claim against the

21   partnership's general partner to proceed, *Luciani* carefully ***distinguished*** cases

22   dismissing fraud claims where adversaries in pending litigation made alleged

23   misrepresentations while represented by independent counsel.  *Id,* 4.  Even though

24   in *Luciani*, litigation was pending when the general partner made the alleged

25   _____

26   [1] *See also Facebook, Inc. v. ConnectU*, Inc., 2008 WL 8820476, at *5 (N.D. Cal.
     June 25, 2008) (same); *Microsoft Corp. v. Hon Hai Precision Indus. Co.*, 2020 WL
27   836712, at *12 (N.D. Cal. Feb. 20, 2020) (same); *Barkett v. Sentosa Properties*
     *LLC*, 2015 WL 3756348, at *7 (E.D. Cal. June 16, 2015) (same).
28

EISNER, LLP

2873263

5

DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS

1    misrepresentations, the lawsuit was "one for dissolution of partnership filed by Sav-

2    On [the partnership]", not an action where the parties were opponents "in which one

3    party is alleged to have committed some wrong against the other." *Id.* The non

4    adversarial nature of the dissolution action, and "the fact that Plaintiff had **not**

5    **originated the action**" were important for the holding in *Luciani* because "Plaintiffs

6    had **no reason** to employ discovery devices to '**ferret out' evidence**" of fraud. *Id.*

7           Here, the relationship between Gruen and Defendants could not be more

8    **antagonistic** at the time of Reynolds' April 14, 2022 letter.  According to the FAC,

9    "on March 7, 2022, Michael [Gruen] was informed…an apparent coup was

10   underway at CrossCheck[.]" Dkt. 29, ¶75.  Clearly recognizing the hostile nature of

11   the dispute, Gruen quickly retained litigation counsel Hawgood, who initiated the

12   dispute by explicitly threatening litigation, asserting various legal claims against

13   Defendants.  *See* Dkt. 36-3: April 11, 2022 letter labeled "CONFIDENTIAL: FOR

14   LITIGATION PURPOSES ONLY"; Dkt. 36-4: April 12, 2022 letter twice asserting

15   that Gruen would "file litigation."  Further in contrast to the *Luciani* plaintiffs, "who

16   had no reason to 'ferret out' evidence of" fraud prior to settling, Gruen not only

17   *suspected* Defendants were "try[ing] to steer business away from the LLC" and "to

18   cutoff Mr. Gruen from his fair share of future profits", but also demanded

19   Crosscheck's financial records to potentially "disocver[]" Defendants' misconduct.

20   Dkt. 36-4.  In sum, Gruen's argument that *Luciani*'s holding extends to the instant

21   action is groundless.

22          Nor could Gruen's conclusory assertion that the Crosscheck Defendants owed

23   fiduciary duties to him save his deficient claims.  A plaintiff must allege specific

24   facts giving rise to a legally cognizable fiduciary relationship.[2] *World Surveillance*

25   *Grp. Inc. v. La Jolla Cove Invs., Inc.*, 66 F. Supp. 3d 1233, 1236 (N.D. Cal. 2014)

26

27   [2]The FAC only alleges specific facts about the CAA Defendants as fiduciaries to

28   Gruen.

1   (applying California law, "[t]ese conclusory allegations do not come close to

2   alleging facts sufficient to impose the exceptional duties of a fiduciary on

3   [Defendant].")  There is no tenable argument that Reynolds, who was Gruen's

4   opposing counsel, somehow owed a fiduciary duty to his adversary, Gruen.  As

5   purported evidence of a fiduciary relationship, the Opposition quotes ***nonexistent***

6   words from Reynolds' April 14, 2022 letter.  Dkt. 48, p.11. Nowhere in the letter

7   mentions fiduciary duty "as a fellow member of CrossCheck", instead, the letter

8   makes clear that Gruen ***owed Richards*** fiduciary duties as a result of Gruen serving

9   as Richards' "***talent agent, business manager, and producer***." Dkt. 36-5, pp.1-2

10  (emphasis added).

11          The Opposition's argument that Gruen was not a sophisticated party plainly

12  contradicts the FAC.  According to the FAC, Gruen "is a 25-year-old entrepreneur

13  and businessman" who "was featured in Forbes's 30 Under 30 list for his substantial

14  contributions to the media and entertainment industries as a guiding force behind the

15  internet phenomenon…Business Insider profiled Michael as one of the top 19 talent

16  managers or agents for TikTok influencers." Dkt. 29, ¶ 1, 28-48.  The Opposition's

17  emphasis on Defendants' alleged mocking of Hawgood as "incompetent" is

18  irrelevant.  Guren does not allege that *he* believed Hawgood was incompetent or

19  failed to provide adequate legal representation to Gruen (due to his alleged illness or

20  otherwise) in connection with the settlement. If he does, he should bring a

21  malpractice claim against Hawgood or his law firm, which is the same firm now

22  representing Gruen.

23  **III.   THE LITIGATION PRIVILEGE APPLIES**

24          **A.      Attorney Demand Letters And Responses Thereto Are Privileged**

25                  **As A Matter Of Law.**

26          As set forth in Defendants' Motion, Attorney Reynolds' April 14 letter is

27  protected by California's litigation privilege.  "[A] demand letter sent in anticipation

28  of litigation is a legitimate speech or petitioning activity that is protected under

1    section 425.16." *Malin v. Singer*, 217 Cal. App. 4th 1283, 1293 (2013). Responses

2    to litigation threats are also protected by the litigation privilege. *See Flickinger v.*

3    *Finwall*, 85 Cal. App. 5th 822, 833 (2022); *see also See Rohde v. Wolf*, 154 Cal.

4    App. 4th 28, 38 (2007).

5        Though Gruen disingenuously claims in the Opposition that "Litigation Was

6    Never Contemplated As To A Buyout Of Gruen", such argument contradicts the

7    explicit text of the correspondence sent by Hawgood and the same firm representing

8    Gruen in this litigation.  This same firm threatened to file a lawsuit against

9    Defendants in various demand correspondence. *See* Dkt. 36-3: April 11, 2022 letter

10   labeled  "CONFIDENTIAL: FOR LITIGATION PURPOSES ONLY"; Dkt. 36-4:

11   April 12, 2022 letter twice asserting that Gruen would "file litigation."  The parties

12   later participated in a formal mediation before a retired judge.  Dkt. 36-9.  The

13   Parties explicitly agreed that they entered into the Settlement Agreement "to avoid

14   the cost and uncertainty of ***further litigation***".  Dkt. 29-1, p. 12 (emphasis added).

15       None of the cases cited in the Opposition supports Gruen's argument.  Gruen

16   relies on *Edwards v. Centex Real Est. Corp*., 53 Cal.App.4th 15 (1997), a 1997

17   appellate court decision that predates the California Supreme Court's 1999 *Briggs*

18   opinion and its 2004 decision in *Hagberg v. California Federal. Bank*, 32 Cal. 4th

19   350 (2004). *Edwards* is easily distinguishable because there was no actual threat of

20   litigation in that case. The Court in *Edwards* held that "a lawsuit or some other form

21   of proceeding must actually be suggested or proposed, orally or in writing." *Id*. at

22   34. In that case, "Appellants' initial claims to Centex simply informed it of the

23   cracks in their home foundations, and asked that the cracks be investigated and

24   repaired." *Id*. at 38. Unlike this case, "[t]here was no threat or suggestion of a

25   lawsuit." *Id*. at 38. Accordingly, the litigation privilege did not apply. *Id*.

26       The case of *Action Apartment Assn., Inc. v. City of Santa Monica*, 41 Cal. 4th

27   1232 (2007), is also inapposite. Contrary to Gruen's opposition brief, this case

28   absolutely did not hold that "threatened suit [was] not enough to trigger litigation

DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS

1    privilege." Dkt. 48, p. 20:11-12. Rather, *Action Apartment Assn.* addressed the

2    question of whether the litigation privilege preempted a local tenants' rights

3    ordinance.  *Id.* at 1241-1250. The Court then remanded the case for the lower courts

4    "to determine whether [the] particular eviction notice is privileged" in light of its

5    holding. *Id*. at 1251.

6        Like the other cases cited by Gruen, *Medallion Film LLC v. Loeb & Loeb*

7    *LLP*, 100 Cal. App. 5th 1272 (2024), also does not support Gruen's position.

8    Critically, in *Medallion Film*, the Loeb & Loeb attorney who claimed litigation

9    privilege sent the email in response to an email that was "not even directed to [Loeb

10   & Loeb's client]", but to a third party financial services firm, BlackRock, and it

11   constituted merely "a request to a third party for help obtaining money the plaintiffs

12   believed they were owed" by Loeb & Loeb's client. *Id*. 1288, 1290.  Thus, because

13   the letter was addressed only to a third party, and requested assistance in collections

14   rather than threatened litigation, the Court held that Loeb & Loeb's email after

15   learning of the email to BlackRock was not privileged. *Id*. at 1290-91. The facts of

16   this case could not be more different: here, Attorney Hawgood's correspondence

17   was sent directly to defendants, and they explicitly threatened litigation.

18       Further, while Gruen makes much of *Eisenberg v. Alameda Newspapers, Inc.*,

19   74 Cal. App. 4th 1359 (1999), that case is both distinguishable on its face, and also

20   predates *Briggs* and *Hagberg*. There, the communication that was alleged to be

21   tortious, and which the newspaper claimed was protected by the litigation privilege,

22   was a public retraction notice printed in a newspaper—not communications between

23   litigation attorneys about contemplated claims and defenses. *Id.* at 1379. The Court

24   held quite simply that "No published decision has ever held a newspaper retraction

25   is privileged under section 47(b)," and held that the privilege therefore did not

26   apply. *Id*. Consistent with the case law cited by Defendants, *Eisenberg* also held that

27   "it is necessary that there be proof of 'some actual verbalization of the danger that a

28   given controversy may turn into a lawsuit.'" *Id*. as 1379. Hawgood's repeated

1    affirmative representations of anticipated litigation easily satisfies this rule.

2        Finally, *Laffer v. Levinson, Miller, Jacobs & Phillips*, 34 Cal. App. 4th 117

3    (1995), bears no resemblance to the fact here. There, the Court had serious "doubt

4    whether respondents in good faith seriously contemplated litigation" due to "the

5    strong language of their release in the prior action", and held that there was a triable

6    issue of fact with respect to the seriousness of the litigation threat. *Id*. Here,

7    however, at the time of the threatened litigation, in April 2022, no such release

8    agreement had been signed.

9        All of the above cases stand for the proposition that a demand letter

10    threatening litigation sent directly to a potential defendant or their attorney, and the

11    potential defendant's response thereto, are ***protected*** by the litigation privilege ***as a***

12    ***matter of law***. And while it is true that whether litigation was seriously

13    contemplated in good faith can be a question of fact, under the circumstances

14    presented here—a standard demand letter threatening litigation sent by a potential

15    plaintiff's attorney followed shortly by the potential defendant's response disputing

16    those allegations and threatening counterclaims—the Court of Appeal universally,

17    and in more modern cases, finds that such communications are privileged as a

18    matter of law[3]. There is no curveball in the fact pattern here that creates a triable

19    issue of facts: no pre-existing release agreement as in *Laffer*, no third party recipient

20    of the alleged demand letter as in *Medallion Film*, and, unlike *Eisenberg*, the

21

22

---

[3] *See Malin*, 217 Cal. App. 4th 1283, 1302 (2013) (attorney demand letter privileged

23    as a matter of law); *Digerati Holdings, LLC v. Young Money Ent., LLC*, 194 Cal.

24    App. 4th 873, 879 (2011) (record on anti-SLAPP motion "establishes as a matter of
law that the alleged prelitigation statements" threatening litigation "related to

25    litigation that was contemplated in good faith and under serious consideration at the
time the statements were made"); *Flickinger*, 85 Cal. App. 5th 822, 828 (attorney's

26    response to demand letter privileged as a matter of law because it "Pendergrast's
[his client's] interest in avoiding the litigation"); *Rohde*, 154 Cal. App. 4th at 38

27    (counter-threat to litigation threat privileged as a matter of law).

28

1  allegedly tortious communications are actually settlement communications between

2  litigation attorneys. Accordingly, under the well-worn pattern of controlling

3  California precedent, Attorney Reynolds' April 14, 2022 letter is absolutely

4  protected under California's litigation privilege.

5  **IV.     THE ALLEGED FRAUD IS PREDICATED ON STATEMENTS**

6  **PROTECTED BY CALIFORNIA'S MEDIATION PRIVILEGE**

7        The Motion established that under California's mediation confidentiality

8  statute, communications, writings, and documents made for the purpose of, in the

9  course of, or pursuant to a mediation are confidential and inadmissible in litigation.

10  "Mediation confidentiality protects communications and writings if they are

11  materially related to, and foster, the mediation." *Wimsatt v. Superior Court*, 152 Cal.

12  App. 4th 137, 160 (2007).  These strict mediation confidentiality provisions,

13  codified in in California Evidence Code section 1115 *et seq*, are "***clear and***

14  ***absolute***", and "do not permit judicially crafted exceptions or limitations." *Cassel v.*

15  *Superior Court,* 51 Cal. 4th 113, 118 (2011) (emphasis added).

16        In the Opposition, Gruen's proffered reading of the mediation privilege is

17  contrary to California law and federal courts' application of California's mediation

18  confidentiality statute. First, contrary to Gruen's assertion, none of the cases he cited

19  *require* the parties to have an agreement to mediate for communications to be

20  protected under mediation privilege.  *Wimsatt*, cited by Gruen for support, in fact

21  stresses the breadth of mediation privilege, pointing to cases where the "California

22  Supreme Court again broadly interpreted mediation confidentiality", and warned the

23  parties if "they do not intend to be bound by the mediation confidentiality statutes,

24  they should '***make it clear at the outset that something other than a mediation is***

25  ***intended.***'" *Id.* 154, 164. (emphasis added).  Reynolds' April 14, 2022

26  correspondence does the opposite by proposing mediation.  Applying California

27  law, district courts in the Ninth Circuit also reject the notion that a mediation must

28  be scheduled to trigger mediation privilege. See *Liberty Mut. Fire Ins. Co. v. Bosa*

1  *Dev. California II, Inc*., No. 3:17-CV-0666-AJB-BGS, 2019 WL 3306304 *3-4

2  (S.D. Cal. July 23, 2019).

3         Nor is the "but for" test an absolute requirement to trigger the mediation

4  privilege.  *Albert D. Seeno Constr. Co. v. Aspen Ins. UK Ltd.,* No. 17-CV-03765-SI,

5  2020 WL 6118497 (N.D. Cal. Oct. 16, 2020) (excluding expert testimony where the

6  expert may have relied on information contained in confidential mediation briefs).

7  Even assuming such, Gruen's contention that the financial records Defendants

8  provided right before the scheduled mediation do not meet the "but for"

9  requirement is wholly baseless. Dkt 48, p.20.  Hawgood agreed to the condition that

10  financial records could only be made "available prior to the mediation with an

11  appropriate confidentiality agreement in place."  Dkt. 36-6.  Gruen cannot allege in

12  good faith, that the Confidentiality Agreement he signed is

13  "defunct."  Dkt. 48, p.20.

14  **V.     THE FAC FAILS TO ALLEGE UNCONSCIONABILITY, UNDUE**

15          **INFLUENCE, AND FAILED CONSIDERATION**

16         Although all claims in the FAC for unconscionability, undue influence and

17  failed consideration are barred by the express language of the Settlement

18  Agreement, they also fail for other grounds.

19         **A.     Unconscionability**

20         The facts alleged in the FAC do not even come close to unconscionable under

21  longstanding California law. A contract is enforceable unless it is both procedurally

22  and substantively unconscionable. Cal. Civ. Code, § 1670.5; *24 Hour Fitness, Inc. v.*

23  *Superior Court,* 66 Cal.App.4th 1199, 1212–1213, (1998). To establish procedural

24  unconscionability, a plaintiff must show an inequality in bargaining power resulting

25  in unfair surprise. *Id.* Substantive unconscionability requires a deal that is "so one-

26  sided as to shock the conscience." *Id.* at 1213.

27         Despite citing to cases stating the same two-prong test, the Opposition makes

28  two legally untenable arguments without any authorities to substantiate the baseless

1   assertions. *See* Dkt. 48, p. 21.  Gruen first contends that Hawgood's request to

2   Reynolds on April 19, 2022 demanding to inspect Crosscheck's financial

3   documents, alone, evidences "unequal bargaining power." Dkt. 48, p. 21-22.  Gruen

4   next argues that because Defendants provided some requested financial documents

5   right before "close of business the day before mediation", the settlement was

6   somehow unconscionable.  *Id.* at p. 22.  These arguments are legally frivolous.  If

7   the process were unconscionable, Gruen's attorney could have advised him against

8   signing any release agreement and instead initiated litigation.

9          **B.     Undue Influence**

10         Courts will not invoke undue influence to invalidate a contract absent rare

11  circumstances which are not present here. *See Robison v. City of Manteca,* 78 Cal.

12  App. 4th 452, 458 (2000) (dismissing plaintiff employee's undue influence claim

13  with prejudice even though the employee did not have legal representation when he

14  signed the release).  Gruen initiated the dispute, and ultimately settled at the advice

15  of his counsel after participating in mediation.  The Opposition does not cite, and

16  Defendants are not aware of, any cases supporting Plaintiff's undue influence claim.

17         Although Gruen allegedly "suffered an acute neurological impairment" at the

18  time of the settlement negotiations, all such communications concerning the

19  Settlement Agreement were exclusively between the parties' respective litigation

20  counsel, Hawgood and Reynolds.  Gruen never once alleged that Hawgood failed to

21  adequately represent him in the underlying dispute.  Any argument that Defendants'

22  conduct during settlement negotiations even came close to "excessive pressure"

23  sufficient to deprive Gruen of his free will is plainly untenable.

24         **C.     Failed Consideration**

25         Gruen alleges, as failed consideration, that (1) Defendants failed to "facilitate

26  the occurrence of the dinner" between Richards and Gruen, and (2) disparaged

27  Gruen to his business contacts. As explained in the Motion and below, Gruen failed

28  to adequately allege breach of either contractual promise to warrant rescission.

1   Gruen's only other argument is that Crosscheck owed him additional money

2   from his capital account after Gruen signed the Settlement Agreement. Not only did

3   Gruen explicitly "relinquish[] all of his right, title and interest in" Crosscheck and

4   "in any affiliated entity," Dkt. 29-1, p. 12 ¶ 1.2, he explicitly released Crosscheck

5   from all liabilities of any kind. *Id*., p. 13 ¶ 1.4. Gruen's incoherent assertion that

6   Gruen was supposedly still owed money from Crosscheck *after* he signed the

7   Settlement Agreement only highlights Gruen's disregard for the actual facts or

8   controlling law and agreements governing his claims.

9   **VI.    THE SECOND CLAIM FOR BREACH OF CONTRACT FAILS**

10   Defendants' allegedly disparaging speech does not violate the Settlement

11   Agreement's non-disparagement provision. The FAC does not allege disparagement

12   that occurred in a "forum." Under Section 1.9 of the Settlement Agreement, the

13   parties agreed "not to make disparaging remarks about the other in any ***forum***,

14   including not limited to social media." (emphasis added).  Though the Settlement

15   Agreement does not define "forum", Black's Law Dictionary defines "forum" as:

16   "1. A public place, esp. one devoted to assembly or debate [citation] 2. A court or

17   other judicial body; a place of jurisdiction." Black's Law Dictionary (11th ed. 2019).

18   The Opposition does not dispute that under the dictionary meaning of

19   "forum", Defendants did not breach of the Non-Disparagement provision.  Dkt. 48,

20   23.  Instead, Plaintiff only argues that "forum" means public forum because a

21   different provision of the Settlement Agreement, "1.8 Confidentiality" uses the term

22   "public forum".  None of the cases Plaintiff cites support this argument.

23   *Shepardson v. Mitchell,* No. H033546, 2010 WL 28835 (Cal. Ct. App. Jan. 7, 2010)

24   is an unpublished state court opinion, which in any event, undermines Gruen's

25   position.  The contractual term at issue in *Shepardson* concerned making

26   "defamatory statement comments", and "there is a difference between a defamation,

27   which is knowingly making a false statement as opposed to a disparaging

28   statement…It's something of a different concept." *Id.* *4.  *Badgerow v. Walters*, 596

1   U.S. 1, 11 (2022) is inapposite because it involved rules of statutory interpretation.

2   Further, as explained in the Motion, the FAC does not sufficiently allege

3   specific conduct by Richards to constitute breach of the dinner provision.  Nor did

4   Gruen sufficiently allege breach of the dinner provision against Sawtelle, who has

5   no obligations to perform.  Because the Opposition does nothing more than re-

6   stating the conclusory allegations of breach by Richards and Sawtelle, the breach of

7   contract claim fails.

8   **VII.   PLAINTIFF'S WAGE CLAIM FAILS**

9   Gruen wrongfully asserts a wage claim which he expressly released under the

10   Settlement Agreement.  Dkt. 29-1, p. 13. (releasing Richards, Sawtelle, Crosscheck

11   Studios and "its respective members, shareholders, partners, subsidiaries, affiliates,

12   agents, officers…." from "all charges, complaints, claims, causes of action,

13   liabilities of any kind…"). Moreover, at no point does Gruen assert that he was an

14   employee of Crosscheck; he admits he was an owner of the company, ***completely***

15   ***defeating his claim***.  Controlling law states that "Labor Code section 206.5 simply

16   prohibits employers from coercing settlements by withholding wages concededly

17   due." *Watkins v. Wachovia Corp.*, 172 Cal. App. 4th 1576, 1587 (2009). There is no

18   allegation that any Defendant did so here.

19   While the Opposition contends that Buddy's Hard was not an "affiliate" of

20   Crosscheck at the time of the settlement, such argument is inconsistent with

21   California law. In *Iqbal v. Ziadeh,* 10 Cal. App. 5th 1, 9 (2017), the Court explained

22   that the word "refers to a relationship that is closer than a mere arm's length

23   contractual relationship…The ordinary and usual meaning of the noun 'affiliate' is

24   'an affiliated person or organization.'"  Here, Gruen concedes that both Buddy's

25   Hard and Crosscheck shared an owner, Richards. Dkt. 48, pp. 24-25. The FAC

26   further alleges the two entities shared resources, staff, among other things, clearly

27   sufficiently close to qualify as "affiliates" under California law.

28   Thus, the Court should dismiss Plaintiff's third claim for failure to pay wages.

1   DATED:  June 28, 2024          EISNER, LLP

2

3

4   By: _____

5       JEREMIAH REYNOLDS
        ZACHARY T. ELSEA
6       ELAINE LI
        Attorneys for Defendants
7       JOSHUA RICHARDS; CHRISTOPHER
        SAWTELLE; CROSSCHECK STUDIOS,
8       LLC; and BUDDY'S HARD, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**STATEMENT OF COMPLIANCE**

2      The undersigned, counsel of record for Defendants Joshua Richards;

3   Chirstopher Sawtelle; CrossCheck Studios, LLC; and Buddy's Hard, LLC, certifies

4   that this brief contains 5521 words, which complies with the word limit of L.R. 11-

5   6.1.

6

DATED:  June 28, 2024            EISNER, LLP

7

8

9                                                 By: _____

10                                                    JEREMIAH REYNOLDS
                                                      Attorneys for Defendants
11                                                    JOSHUA RICHARDS; CHRISTOPHER
12                                                    SAWTELLE; CROSSCHECK STUDIOS,
                                                      LLC; and BUDDY'S HARD, LLC
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28