JEREMIAH REYNOLDS (SBN 223554)
jreynolds@eisnerlaw.com
ZACHARY ELSEA (SBN 279252)
zelsea@eisnerlaw.com
ELAINE LI (SBN 333529)
eli@eisnerlaw.com
EISNER, LLP
433 N. Camden Dr., 4th Floor
Beverly Hills, California 90210
Telephone: (310) 855-3200
Facsimile: (310) 855-3201

Attorneys for Defendants
JOSHUA RICHARDS, CHRISTOPHER
SAWTELLE, BUDDY'S HARD, LLC
and CROSSCHECK STUDIOS, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MICHAEL GRUEN, | Case No. 2:24-cv-01777-AB-SSC |
| Plaintiff, | |
| vs. | *Hon. André Birotte Jr.* |
| JOSHUA RICHARDS, an individual; CHRISTOPHER SAWTELLE, an individual; CROSSCHECK STUDIOS, LLC, a California limited liability company; BUDDY'S HARD, LLC, a Delaware limited liability company; CREATIVE ARTISTS AGENCY, LLC, a Delaware Limited Liability Company; CAA HOLDINGS, LLC, a Delaware Limited Liability Company, | **NOTICE OF MOTION AND MOTION OF JOSHUA RICHARDS, CHRISTOPHER SAWTELLE, BUDDY'S HARD, LLC AND CROSSCHECK STUDIOS, LLC FOR SANCTIONS PURSUANT TO FED. R. CIV. P. RULE 11; MEMORANDUM OF POINTS AND AUTHORITIES** |
| | *Filed concurrently with Declarations of Jeremiah Reynolds and Zachary Elsea* |
| Defendants. | Judge:   Hon. André Birotte Jr.<br>Date:    August 9, 2024<br>Time:    10:00 a.m.<br>Crtrm.:  8D |
| | Trial Date:          None Set |

1

## **TABLE OF CONTENTS**

Page

MEMORANDUM OF POINTS AND AUTHORITIES..........................................1

I.     INTRODUCTION ....................................................................................1

II.    LEGAL STANDARD ..............................................................................4

III.   STATEMENT OF FACTS ......................................................................5

    A.    Gruen's Attorney Threatens Litigation ......................................5

    B.    Defendants' Litigation Counsel Sends A Responsive Counter-Demand Letter Proposing Mediation ..........................................6

    C.    Gruen's Lawyer Requests Accounting Documentation In Furtherance of the Mediation ....................................................6

    D.    Defendants Provide (Allegedly Incomplete) Accounting Documents To Facilitate The Mediation ....................................7

    E.    Hon. Allan Goodman (Ret.) Mediates the Case and Brokers A Settlement ...................................................................8

    F.    Gruen Signs Manifold Broad Releases ......................................8

    G.    Gruen Improperly Asserts The Very Claims He Waived ...........9

IV.    GRUEN'S ARGUMENT THAT THE SETTLEMENT AGREEMENT IS UNCONSCIONABLE IS LEGALLY FRIVOLOUS AND PREDICATED ON EGREGIOUS MISREPRESENTATIONS AND OMISSIONS.........................................................................................10

V.     GRUEN'S ASSERTION OF INDISPUTABLY RELEASED CLAIMS IS LEGALLY FRIVOLOUS ..................................................................12

    A.    Gruen Released The Claims He Now Asserts ..........................12

    B.    The Alleged Fraud Is Predicated On Statements Protected By The Mediation Privilege.............................................................17

    C.    The Alleged Fraud Is Predicated On Statements Protected By The Litigation Privilege .............................................................19

    D.    Gruen's Employment Claim (Claim 3) Also Falls Squarely Within The Scope Of The Settlement Agreement ...................22

VI.    CONCLUSION ......................................................................................23

EISNER, LLP

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*24 Hour Fitness, Inc. v. Superior Court*,
   66 Cal. App. 4th 1199 (1998) ............................................................................ 11

*Adams v. Superior Court*,
   2 Cal. App. 4th 521 (1992) ............................................................................... 20

*Asia Inv. Co. v. Borowski*,
   133 Cal. App. 3d 832 (1982) ............................................................................ 20

*Barkett v. Sentosa Properties LLC*,
   2015 WL 3756348 (2015) ................................................................................. 16

*Belasco v. Wells*,
   234 Cal. App. 4th 409 (2015) ...................................................................... 15, 22

*Blodgett v. Allstate Ins. Co.*,
   2012 WL 2377031 (2012) ................................................................................. 18

*Estate of Blue v. Cty. of Los Angeles*,
   120 F.3d 982 (1997) ........................................................................................... 4

*Borg v. Principal Life Ins. Co.*,
   2008 WL 11453724 (2008) ............................................................................... 16

*Brae Transp., Inc. v. Coopers & Lybrand*,
   790 F.2d 1439 (1986) ....................................................................................... 16

*Cassel v. Superior Court*,
   51 Cal. 4th 113 (2011) ...................................................................................... 18

*Christian v. Mattel, Inc.*,
   286 F.3d 1118 (2002) ......................................................................................... 4

*In re City Equities Anaheim, Ltd.*,
   22 F.3d 954 (1994) ........................................................................................... 16

*Cooter & Gell v. Hartmarx Corp.*,
   496 U.S. 384 (1990) ........................................................................................... 4

*Facebook, Inc. v. ConnectU, Inc.*,
　2008 WL 8820476 (2008) ................................................................................. 16

*Flatley v. Mauro*,
　39 Cal. 4th 299 (2006) .................................................................................... 20

*Foxgate Homeowners' Ass'n, Inc. v. Bramalea California, Inc.*,
　26 Cal. 4th 1 (2001) ....................................................................................... 17

*Fuerst v. Fuerst*,
　832 F. Supp. 2d 210 (E.D.N.Y. 2011) .............................................................. 5

*Hagberg v. California Fed. Bank*,
　32 Cal. 4th 350 (2004) ..................................................................... 19, 20, 21, 22

*Hall v. Hamilton Fam. Ctr.*,
　2014 WL 1410555 (2014) ....................................................................... 3, 4, 10

*Harman v. Golden Eagle Ins. Co.*,
　2018 WL 1791915 (2018) ............................................................................... 18

*Hinesley v. Oakshade Town Ctr.*,
　135 Cal. App. 4th 289 (2005) ......................................................................... 15

*Home Ins. Co. v. Zurich Ins. Co.*,
　96 Cal. App. 4th 17 (2002) ....................................................................... 20, 21

*Kashian v. Harriman*,
　98 Cal. App. 4th 892 (2002) ........................................................................... 20

*Lancer Offshore, Inc. v. Dominion Income Mgmt. Corp.*,
　2002 WL 441309 (2002) ....................................................................... 13, 14, 15

*Lerette v. Dean Witter Org., Inc.*,
　60 Cal. App. 3d 573 (1976) ............................................................................ 20

*Liberty Mut. Fire Ins. Co. v. Bosa Dev. California II, Inc.*,
　2019 WL 3306304 (S.D. Cal. July 23, 2019) .................................................. 19

*Liberty Surplus Ins. Corp. v. Ledesma & Meyer Constr. Co.*,
　2012 WL 12896220 (C.D. Cal. June 19, 2012) ............................................... 18

*Microsoft Corp. v. Hon Hai Precision Indus. Co.*,
　2020 WL 836712 (N.D. Cal. Feb. 20, 2020) ............................................... 8, 16

*Perez v. Uline, Inc.*,
   157 Cal. App. 4th 953 (2007) ........................................................... 12

*Pruco Life Ins. Co. v. California Energy Dev. Inc.*,
   WL 3718842 (S.D. Cal. Aug. 29, 2022) ............................................ 4

*Robison v. City of Manteca*,
   78 Cal. App. 4th 452 (2000) ...................................................... 11, 12

*Rojas v. Superior Ct.*,
   33 Cal. 4th 407 (2004) ............................................................... 17, 19

*Ron Greenspan Volkswagen, Inc. v. Ford Motor Land Dev't Corp.*,
   32 Cal. App. 4th 985 (1995) .......................................................... 14

*Salehi v. Surfside III Condo. Owners' Assn.*,
   200 Cal. App. 4th 1146 (2011) ....................................................... 22

*Silberg v. Anderson*,
   50 Cal. 3d 205 (1990) ..................................................................... 19

*In re Suk Kim*,
   No. 06-00157, 2010 WL 148635 (2010) ........................................... 4

*Wallack v. Idexx Laboratories, Inc., et al.*,
   2015 WL 1727875 (S.D. Cal. Apr. 15, 2015) ................................. 13

*Wilhelm v. Pray, Price, Williams & Russell*,
   186 Cal. App. 3d 1324 (1986) ........................................................ 16

*Wimsatt v. Superior Court*,
   152 Cal. App. 4th 137 (2007) ................................................... 17, 18

**Statutes**

Cal. Civ. Code § 47 ................................................................... 19, 20

Cal. Civ. Code § 1542 .................................................................... 13

Cal. Civ. Code § 1670 .................................................................... 11

Cal. Evid. Code § 1115 .................................................................. 18

Cal. Evid. Code § 1119 ....................................................... 17, 18, 19

Cal. Evid. Code § 1152 ..................................................................... 7

EISNER, LLP

**Other Authorities**

Fed. R. Civ. P. 11 .................................................................................. 1, 3, 4, 10

Fed. R. Civ. P. 11(b)(2) ....................................................................... 1, 2, 3, 17

Fed. R. Civ. P. 11(b)(3) ................................................................................ 1, 3

Fed. R. Civ. P. 11(c)(2) ..................................................................................... 1

Fed. R. Evid. 501 ............................................................................................ 18

EISNER, LLP

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on August 9, 2024, at 10:00 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable André Birotte Jr., located in the United States Courthouse, 350 West 1st Street, Los Angeles, CA 90012, Joshua Richards, Christopher Sawtelle, Buddy's Hard, LLC and CrossCheck Studios, LLC ("Defendants") will and hereby do move this Court for an order imposing terminating and monetary sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure.  The Court should order counsel for Gruen licensed in California to report any sanctions to the State Bar of California and counsel for Gruen who is licensed in Arizona to report any sanctions to the State Bar of Arizona.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declaration of Jeremiah Reynolds filed concurrently herewith, all of the pleadings, files, and records in this proceeding, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

This Motion is made following service of this Motion on Plaintiff's counsel no less than 21 days before filing in accordance with Federal Rule of Civil Procedure 11(c)(2), and following the conference of counsel pursuant to L.R. 7-3. Declaration of Zachary Elsea, ¶ 9.

1    DATED:  July 11, 2024          EISNER, LLP

2

3

4                                   By: _____
                                       JEREMIAH REYNOLDS
5                                      Attorneys for Defendants
                                       JOSHUA RICHARDS; CHRISTOPHER
6                                      SAWTELLE; BUDDY'S HARD LLC;
                                       CROSSCHECK STUDIOS, LLC
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EISNER, LLP

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    INTRODUCTION

Plaintiff Michael Gruen's frivolous lawsuit asserts claims explicitly released and barred by the parties' June 9, 2022 Confidential Settlement and Release Agreement (the "Settlement Agreement"). Dkt. 29-1, pp. 12-17. Because Gruen's First Amended Complaint is legally frivolous and conceals critical facts concerning the parties' protracted negotiations and mediation of the Settlement Agreement, Gruen's counsel are subject to sanctions under Rule 11(b)(2) and 11(b)(3). Defendants Joshua Richards, Christopher Sawtelle, Buddy's Hard LLC, and Crosscheck Studios, LLC ("Crosscheck") (collectively, "Defendants") are all signatories and/or releasees under the Settlement Agreement, and they respectfully request that the Court dismiss Gruen's First Amended Complaint with prejudice and award them their attorneys' fees incurred in defending against this frivolous action.

Over two years ago, Plaintiff Michael Gruen's attorney sent Defendants a demand letter accusing them of providing insufficient financial information about Crosscheck, trying to "steer business away" from Mr. Gruen's interests, and trying to "cutoff Mr. Gruen from his fair share of future profits." Dkt. 29, ¶ 79; Declaration of Jeremiah Reynolds, Ex. 3. After negotiations conducted *in writing* and ***exclusively though the parties' respective counsel,*** and following a full day mediation with a respected former judge at ADR Services, Inc., Gruen and Defendants entered into a binding Settlement Agreement "to fully and finally resolve all disputes of any nature, including without limitation disputes in connection to Crosscheck." Dkt. 29-1, pp. 12-17.

The Settlement Agreement was explicitly crafted by counsel ***on both sides*** to ensure that neither side could later come back and argue they had been defrauded, pressured, or unduly influenced into signing the Settlement Agreement.  Thus, the Settlement Agreement specifically released all known and ***unknown*** claims of any kind—including "disputes in connection to Crosscheck" and the value of Gruen's

equity. Dkt. 29-1, p. 12. The Parties further **explicitly agreed** that they may discover facts different from what they know or believe to be true relating to the Released Claims, and agreed that the releases would remain in effect "notwithstanding the discovery or existence of any such additional or different claims or facts relevant hereto." *Id*., pp. 13-14, ¶ 1.5. The Parties also agreed that they relied **only** on the advice of their own **independent counsel** and that "they have executed this Agreement **without fraud, duress or undue influence.**" *Id*., p. 15, ¶ 2.5 (emphasis added).

Now, almost two years later, Gruen seeks in this action to **directly contradict** the promises, representations, and warranties he made in the Settlement Agreement by claiming he was "unduly influenced" by the actions of opposing counsel and did actually rely on alleged representations made by Defendants' counsel in **settlement correspondence** sent to Gruen's former lawyer. In other words, Gruen is saying that **he lied** in the Settlement Agreement when he agreed and represented that he was not being unduly influenced and that he was solely relying on the advice of his independent counsel and not any statements by opposing counsel. Defendants would have **never settled** with Gruen if they understood that he was **fraudulently concealing** that he was supposedly relying on representations made in settlement correspondence and that he could simply seek to unwind the settlement years later if he later came to regret the terms.

Defendants are not aware of **any** decision that has allowed a party to proceed based upon claims and allegations of undue influence and fraud that are explicitly contradicted by a signed and fully integrated settlement agreement negotiated between parties represented by independent counsel after a mediation. No settlement would ever be safe from later challenge if parties can simply ignore the explicit terms of the settlement agreement and pretend as if it does not exist. This case should have never been filed and Gruen's attorneys must be sanctioned under Rule 11(b)(2) for asserting **the very claims that Gruen released** and employing

arguments Gruen **explicitly disclaimed** under the Settlement Agreement.

Gruen and his attorneys also attempt to perpetrate a fraud on the Court by concealing that the Settlement Agreement was negotiated **exclusively by counsel**, over the course of several months and after a mediation conducted by a respected retired judge.[1] "Rule 11 sanctions may be appropriate not just where a party affirmatively misleads the Court, but where she omits critical information.'" *Hall v. Hamilton Fam. Ctr.*, 2014 WL 1410555, at *10 (N.D. Cal. Apr. 11, 2014) (cleaned up); *see also Hall v. Hamilton Fam. Ctr.*, 2014 WL 1410555, at *10 (N.D. Cal. Apr. 11, 2014) (holding that plaintiff's "allegations . . . omitted critical information, and such omissions are sufficient grounds for Rule 11 sanctions"). Incredibly, the FAC alleges that the Settlement Agreement was "procedurally unconscionable" and "substantively unconscionable." *See, e.g.*, Dkt. 29, ¶¶ 118-19. The FAC spins a false tale that Defendants took advantage of Gruen's "diminished capacity and/or vulnerability." *Id.*, ¶ 110. These allegations have no evidentiary support under Rule 11(b)(3), and the claims that the Settlement Agreement was "procedurally and substantively" unconscionable and that Defendants obtained the Agreement through "undue influence" are legally frivolous under controlling California law and Rule 11(b)(2).

In summary, Gruen's attempt to unwind the Settlement Agreement that his independent attorney negotiated and obtained for him two years ago after a mediation is legally frivolous and it constitutes a fraud on the Court. The Court should therefore dismiss the FAC and award Defendants' counsel all attorneys' fees incurred in defending against this meritless action under Rule 11(b)(2) and 11(b)(3). The Court should order counsel for Gruen licensed in California to report any

---

[1] It appears that the attorney who negotiated the Settlement Agreement in 2022 on Mr. Gruen's behalf, Mr. Hawgood, was and/or is the law partner of Mr. Gruen's current litigation counsel, Mr. Moran. Elsea Decl., Exs. 1-2.

1  sanctions to the State Bar of California and counsel for Gruen who is licensed in
2  Arizona to report any sanctions to the State Bar of Arizona.

3  **II.    LEGAL STANDARD**

4       "Federal Rule of Civil Procedure 11 provides for the imposition of sanctions
5  when a filing is frivolous, legally unreasonable, or without factual foundation, or is
6  brought for an improper purpose." *Estate of Blue v. Cty. of Los Angeles*, 120 F.3d
7  982, 985 (9th Cir. 1997); *see also Christian v. Mattel, Inc.*, 286 F.3d 1118, 1131
8  (9th Cir. 2002). By filing a pleading, an attorney certifies that it is well grounded in
9  fact and existing law (or a good faith argument for the extension of existing law)
10  and that it is not filed for an improper purpose. *Christian*, 286 F.3d at 1127. Rule
11  11's effect is to "'reduce frivolous claims, defenses or motions and to deter costly
12  meritless maneuvers, . . . [thereby] avoid[ing] delay and unnecessary expense in
13  litigation.'" *Id.* at 1127 (quoting *Golden Eagle Distrib. Corp. v. Burroughs Corp.*,
14  801 F.2d 1531, 1537 (9th Cir. 1986)); s*ee also Cooter & Gell v. Hartmarx Corp.*,
15  496 U.S. 384, 393 (1990) ("the central purpose of Rule 11 is to deter baseless filings
16  in district court and . . . streamline the administration and procedure of the federal
17  courts.").

18       "Rule 11 sanctions may be appropriate not just where a party affirmatively
19  misleads the Court, but where she omits critical information.'" *Hall v. Hamilton*
20  *Fam. Ctr.*, 2014 WL 1410555, at *10 (N.D. Cal. Apr. 11, 2014) (cleaned up); *see*
21  *also Hall v. Hamilton Fam. Ctr.*, 2014 WL 1410555, at *10 (N.D. Cal. Apr. 11,
22  2014) (holding that plaintiff's "allegations . . . omitted critical information, and such
23  omissions are sufficient grounds for Rule 11 sanctions").

24       Courts will issue sanctions against attorneys who assert claims in "breach of
25  [a] settlement agreement." *In re Suk Kim*, No. 06-00157, 2010 WL 148635, at *7
26  (Bankr. D. Haw. Jan. 14, 2010); *see also e.g.*, *Pruco Life Ins. Co. v. California*
27  *Energy Dev. Inc.*, No. 318CV02280DMSAHG, 2022 WL 3718842, at *6 (S.D. Cal.
28  Aug. 29, 2022) (enjoining state litigation commenced in violation of settlement

agreement, ordering per diem monetary sanctions if plaintiff failed to dismiss his lawsuits, and ordering further submissions on monetary sanctions); *Fuerst v. Fuerst*, 832 F. Supp. 2d 210, 219 (E.D.N.Y. 2011) ("[T]he Defendant contends that the Court should sanction the Plaintiff's attorney for failing to withdraw the complaint following the Plaintiff's execution of the Settlement on September 1, 2010. The Court agrees.").

## III.  STATEMENT OF FACTS

### A.  Gruen's Attorney Threatens Litigation

Joshua Richards is a 22-year-old Canadian social media personality based in Los Angeles. Michael Gruen was previously Richards' talent manager, and financial advisor. In early 2021, Gruen and Richards co-founded Crosscheck Studios, LLC, a production company, with Gruen owning 49.99% of the company and Richards owning the remaining 50.01%. Dkt. 29, ¶ 1.[2] Gruen alleges that he was fired at some point in February or March 2022. *Id.*, ¶¶ 71, 77.

Gruen then initiated a dispute by threatening litigation. Dkt. 29, ¶ 79. Reynolds Decl., Exs. 1, 2. On April 11, 2022, Attorney Hawgood sent Defendants a demand letter stating that "I have been retained by Michael Gruen regarding his ownership interests in Crosscheck Studios, LLC. My client, who is a 38.7% owner in the LLC has been shutout of the company entirely and unilaterally by Joshua Richards." Reynolds Decl., Ex. 1.  Hawgood's letter included a document preservation demand and stated that, "I anticipate that litigation, in an action for an accounting at minimum, will be necessary to protect my client's rights." Reynolds Decl., Ex. 1 (Emphasis in original).

Hawgood followed up the next day with another demand letter accusing Richards of ***the very same conduct that Gruen now re-alleges:*** failing to provide financial records relating to Crosscheck LLC, "steer[ing] business away" from Mr.

---

[2] Gruen's equity interest changed to 38.742% in October 2021. *Id.* ¶ 36.

1   Gruen's interests, and trying to "cutoff Mr. Gruen from his fair share of future
2   profits" in "violation of the fiduciary duty" allegedly owed by Mr. Richards. *Id.*, Ex.
3   2, pp. 1-2. The letter made various other claims against Richards, demanded that
4   Gruen be "paid out," and twice asserted that Gruen would "file litigation" against
5   Richards. *Id.*; Dkt. 29, ¶¶ 9, 79.

6       **B.    Defendants' Litigation Counsel Sends A Responsive Counter-**
7           **Demand Letter Proposing Mediation**

8       On April 14, 2022, Jeremiah Reynolds, litigation counsel for Richards,
9   responded to Hawgood's correspondence, laying out Defendants' claims against
10  Gruen, approximating the value and a potential settlement, and proposing mediation.
11  Dkt. 29, ¶ 81; Reynolds Decl., Ex. 3. Importantly, this April 14 letter contains all of
12  the statements about the alleged Amazon deal and the value of Crosscheck Studios
13  that Gruen alleges fraudulently induced him to sign the Settlement Agreement. Dkt.
14  29, ¶¶ 81, 89, 114-117.

15      Reynolds identified himself as "litigation counsel to Mr. Joshua Richards."
16  Reynold Decl., Ex. 3; Dkt. 1, ¶ 83. Reynolds then laid out various legal claims that
17  Richards and Crosscheck had against Gruen, accusing him of "improper self-
18  dealing," of engaging in "a series of self-serving deals that your client orchestrated
19  while abusing his role as a manager, agent and producer to Mr. Richards," and of
20  owing Richards $142,500 in back rent. *Id.* Gruen's original Complaint explicitly
21  alleges that this letter threatened litigation. Dkt. 1, ¶¶ 83; 125-27; 136-38; 142.

22      The April 14 letter concludes with a quantification of Gruen's potential
23  interest in the company and, critically, a proposal to mediate. Dkt. 29, ¶ 9; Reynold
24  Decl., Ex. 3.

25      **C.    Gruen's Lawyer Requests Accounting Documentation In**
26          **Furtherance of the Mediation**

27      Hawgood replied to Reynolds' April 14 letter on April 19, 2022. He prefaced
28  his email in all-caps, bold, underline text: "**Confidential Settlement Discussion**

1  **Cal. Evid. Code § 1152**.” Reynolds Decl., Ex 4, p. 7.

2       Hawgood's letter spent significant time disputing the merits of Defendants'

3  cross-claims. He again threatened to file a lawsuit but agreed to mediation and

4  requested accounting documents in furtherance of the mediation. **"*I am open to***

5  ***mediation and settlement talks before filing a lawsuit.* I** do not think they can be

6  very productive while your client holds all of the financial records and

7  documents for the business and my client is locked out of his email. . . . ***So, while I***

8  ***am open to talking about this I need to get the data you have first in order to do so***

9  ***productively.*"** *Id*. p. 8 (emphasis added).

10       **D.**    **Defendants Provide (Allegedly Incomplete) Accounting Documents**

11            **To Facilitate The Mediation**

12       Gruen alleges that Crosscheck "provide[d] misleading financials" and denied

13  "a full accounting" in order to induce him into entering into the Settlement

14  Agreement. Dkt. 29, ¶¶ 15, 18, 112, 122. Richards and Crosscheck provided Gruen

15  with financial documents exclusively through counsel and for the purpose of the

16  mediation. Dkt. 29, ¶ 3, n. 2. In direct response to Hawgood's email

17  correspondence, Reynolds made it clear that "[w]e can discuss the underlying

18  allegations as part of that process and we make the financial records available prior

19  to the mediation with an appropriate confidentiality agreement in place." Reynolds

20  Decl. Ex. 4, p. 6; *see also* Dkt. 29, p. 3, n. 2.

21       On or around May 18, 2022, Gruen, Richards, and Crosscheck entered into a

22  confidentiality agreement ("Confidentiality Agreement") in order for Defendants to

23  share financial records and related information prior to the scheduled mediation,

24  agreeing that "the documents produced and information disclosed" were done so

25  ***"for the purpose of this Mediation"*** and that they would be treated as confidential.

26  Dkt. 29, p. 4, n. 2; Reynolds Decl., Ex. 5 (emphasis added). The records produced

27  pursuant to the Confidentiality Agreement form, in addition to alleged

28  representations regarding the Amazon deal, the basis of Gruen's Rescission Claim.

1   Dkt. 29, ¶¶ 111-12; 115-17.

2   **E.**   **Hon. Allan Goodman (Ret.) Mediates the Case and Brokers A**

3   **Settlement**

4   The parties participated in a mediation on May 26, 2022. In the two weeks

5   following mediation, the Parties negotiated the final settlement terms through their

6   respective counsel, during which Attorney Hawgood and Attorney Reynolds

7   exchanged drafts of the settlement agreement. Reynolds Decl., Ex. 6. Hawgood

8   specifically confirmed the settlement status on June 13, 2022, writing to Judge

9   Goodman as follows: "We hammered our final terms, and my client sent a signed

10  copy to Mr. Reynolds on Thursday. We are waiting for a countersigned copy, but

11  Mr. Reynolds is on vacation (as am I now). I'm not worried about it. I think this is

12  essentially wrapped up." Reynolds Decl., Ex. 7, p. 1.

13  **F.**   **Gruen Signs Manifold Broad Releases**

14  The Parties explicitly agreed that they entered into the Settlement Agreement

15  "to avoid the cost and uncertainty of *further litigation*," and because they "desire[d]

16  to *fully and finally* resolve all disputes of *any nature*, including without limitation

17  disputes in connection to Crosscheck." Dkt. 29-1, p. 12 (emphasis added). In

18  addition to broad general releases, the Settlement Agreement includes a clause

19  assuming the risk of unknown and unsuspected facts, and facts different from those

20  believed to be true at the time of signing. *Id.*, pp. 13-14, ¶ 1.5. That clause states

21  that "the Parties acknowledge that they are aware that they may *hereafter discover*

22  *claims presently unknown or unsuspected, or facts in addition to or different from*

23  those which they now know or believe to be true, with respect to Released Claims.

24  The Parties acknowledge that the releases set forth in this Agreement shall be and

25  shall remain in effect as full and complete releases notwithstanding *the discovery or*

26  *existence of any such additional or different claims or facts* relevant hereto." *Id.*

27  (emphasis added).

28  The Parties also specifically and explicitly waived the claims Gruen now

EISNER, LLP

brings: each party acknowledged that it "has relied solely upon its own judgment, belief and knowledge, and the advice and recommendations of **_its own independently selected counsel_**, concerning the nature, extent and duration of its rights and claims" and that "**_[t]he Parties acknowledge that they have executed this Agreement without fraud, duress or undue influence_**." *Id.*, p. 15, ¶ 2.5 (emphasis added).

The Settlement Agreement includes an integration and non-reliance clause. It states that "no other party, nor any agent, representative or attorney of any other party, has made **_any_** promise, agreement, covenant, **_representation or warranty whatsoever, express or implied, concerning the subject matter of this Agreement_** that is not contained in this Agreement." *Id.* ¶ 2.4.

In addition to their broad general releases, the Parties further agreed that "they will not file, participate in, or instigate the filing of any lawsuits, complaints, or charges in any state or federal court . . . asserting any of the Released Claims." *Id.*, p. 14, ¶ 1.7.

### G.   Gruen Improperly Asserts The Very Claims He Waived

Nearly two years after signing the Settlement Agreement, Gruen filed this frivolous lawsuit seeking to unwind the settlement.

Claim 1 (the "Rescission Claim") seeks to rescind the Settlement Agreement. The Rescission Claim's primarily basis is that Defendants allegedly misrepresented the financial status of Crosscheck and misrepresented the status of the alleged Amazon deal during settlement negotiations. Dkt. 29, ¶¶ 111-120, 66, 81; Dkt. 1, ¶ 119 ("Defendants intended to induce Gruen's reliance on these materially false representations by making these representations through their business manager and through counsel in the context of settlement negotiations."). The misdeeds Gruen now alleges—diverting corporate opportunity, misrepresenting company financials, and breaching fiduciary duties—are exactly what Gruen's attorney accused Defendants of in his April 12, 2022 letter. *Id.*, ¶ 79; Reynolds Decl., Exs. 1-2.

Shockingly, despite the fact that Defendants' counsel communicated *exclusively* with Gruen's counsel in negotiating the Settlement Agreement, Gruen also asserts that the Settlement Agreement is substantively and procedurally unconscionable, and that it was procured through undue influence. Dkt. 29, ¶¶ 110, 118-120.

Claim 3 is an employment claim that relates exclusively to pre-release activities and it is therefore barred by the Settlement Agreement. *Id.*, ¶ 132.

Defendants' counsel has repeatedly admonished Gruen's counsel, Mr. Moran and Mr. Malzahn, that they have violated Rule 11 by continuing to prosecute the claims alleged in the FAC. Reynolds Decl., ¶ 10. Gruen's counsel, however, have declined to withdraw the FAC.

## IV.   GRUEN'S ARGUMENT THAT THE SETTLEMENT AGREEMENT IS UNCONSCIONABLE IS LEGALLY FRIVOLOUS AND PREDICATED ON EGREGIOUS MISREPRESENTATIONS AND OMISSIONS

The FAC alleges that the Settlement Agreement was both procedurally and substantively unconscionable. *See, e.g.*, Dkt. 29, ¶ 119-120. It also alleges that by executing it, Defendants took advantage of Gruen's "diminished capacity and/or vulnerability." *Id.*, ¶ 110. The FAC also alleges that the Settlement Agreement should be rescinded due to "undue influence." *Id.*, ¶ 120. The allegations are legally frivolous and they constitute an outright fraud on the Court, requiring sanctions.

Rule 11 mandates sanctions not only for affirmative misrepresentations, but also for omissions. "Rule 11 sanctions may be appropriate not just where a party affirmatively misleads the Court, but where it omits critical information.'" *Hall v. Hamilton Fam. Ctr.*, 2014 WL 1410555, at *10 (N.D. Cal. Apr. 11, 2014) (cleaned up); *see also Hall v. Hamilton Fam. Ctr.*, 2014 WL 1410555, at *10 (N.D. Cal. Apr. 11, 2014) (holding that plaintiff's "allegations . . . omitted critical information, and such omissions are sufficient grounds for Rule 11 sanctions").

As discussed above, the Settlement Agreement was negotiated *entirely by*

1  *counsel* and was the product of a formal mediation. Defendants' counsel are aware

2  of this, because, (1) on information and belief, Mr. Moran is and was law partners

3  with Mr. Hawgood, (2) Defendants' counsel has previously provided Gruen's

4  litigation counsel with copies of the mediation correspondence attached hereto, and

5  (3) the mediation and settlement correspondence is part of the public record in this

6  case, Dkts. 36-2 to 36-9.

7        Under the actual facts of this case, any argument that the Settlement

8  Agreement was substantively or procedurally unconscionable or that Defendants

9  exercised undue influence over Gruen in order to force him to settle is legally

10  frivolous and not warranted by existing California law. A contract is enforceable

11  unless it is both procedurally and substantively unconscionable. Cal. Civ. Code, §

12  1670.5; *24 Hour Fitness, Inc. v. Superior Court,* 66 Cal.App.4th 1199, 1212–1213,

13  (1998). To establish procedural unconscionability, a plaintiff must show an

14  inequality in bargaining power resulting in unfair surprise. *Id.* Substantive

15  unconscionability requires a deal that is "so one-sided as to shock the conscience.

16  *Id.* at 1213.  Courts readily dismiss with prejudice unconscionability claims with

17  where, as here, plaintiff cannot allege unfair surprise because he had an opportunity

18  to read the contract prior to signing. *See, e.g.*, *Robison v. City of Manteca*, 78 Cal.

19  App. 4th 452, 459 (2000).

20        Here, Gruen had independent attorney representation and entered the

21  Settlement Agreement after two months' of arm's length negotiation, a formal

22  mediation, and the exchange of multiple rounds of draft agreements. These facts

23  simply cannot establish any surprise at any material terms, let alone procedural

24  unconscionability. *See Robison v. City of Manteca*, 78 Cal. App. 4th 452, 459

25  (2000) ("In the absence of any procedural unconscionability, we need not consider

26  substantive unconscionability.")

27        Likewise, courts will not invoke undue influence to invalidate a contract

28  absent rare circumstances. *Robison v. City of Manteca,* 78 Cal. App. 4th 452, 458

(2000) (dismissing plaintiff employee's undue influence claim with prejudice even though the employee did not have legal representation when he signed the release). Undue influence is the "use of excessive pressure by a dominant person over a servient person resulting in the apparent will of the servient person being in fact the will of the dominant person." *Robison v. City of Manteca,* 78 Cal. App. 4th 452, 458 (2000) (citation and quotation marks omitted).  Relevant factors include (a) an unusual location or time for consummating a contract; (b) absence of independent counsel for the servient party; and (c) an insistence of immediate consummate of contract without an opportunity to consult a third-party, coupled with excessive threats about the consequences of delay.  *Id.*

None of these factors are present here. Gruen initiated the dispute by retaining independent counsel to make a demand, who represented Gruen throughout the entire two-months of negotiations, and entered into a settlement agreement after mediation.  *See Perez v. Uline, Inc.*, 157 Cal. App. 4th 953, 960 (2007) (no economic duress even where plaintiff employee signed a release without attorney representation).

Gruen's argument that there was any undue influence of unconscionability present in relation to his attorney's negotiation of the Settlement Agreement is therefore factually and legally frivolous.

## V.     GRUEN'S ASSERTION OF INDISPUTABLY RELEASED CLAIMS IS LEGALLY FRIVOLOUS

Gruen's Rescission Claim has no basis in existing law because it asserts claims and arguments explicitly waived in the Settlement Agreement, because it improperly relies on attorney communications subject to the mediation privilege, and because those statements are also privileged under California's litigation privilege.

### A.     Gruen Released The Claims He Now Asserts

Gruen alleges that the explicit subject matter of the Settlement Agreement

1   was a "buyout" of Gruen's equity in Crosscheck Studios. *See e.g.,* Dkt. 29, ¶ 11.

2   Gruen now alleges that his attorney got him a bad deal, because he was allegedly

3   misled about the value of the company. But Gruen's fraud claim is barred because

4   he specifically released that claim. *See, e.g.,* *Wallack v. Idexx Lab'ys, Inc*., No.

5   11CV2996-GPC KSC, 2015 WL 1727875 *6-7, 12 (S.D. Cal. Apr. 15, 2015), *aff'd*,

6   726 F. App'x 567 (9th Cir. 2018) (holding that where plaintiff's pre-litigation

7   settlement communications alleged that defendants withheld the company's "true

8   financial condition," such allegations "cannot be a basis to [] void the mutual

9   release.").

10       Indeed, this case is virtually identical to *Lancer Offshore, Inc. v. Dominion*

11   *Income Mgmt. Corp.*, 2002 WL 441309 (S.D.N.Y. Mar. 20, 2002), which applied

12   California law and dismissed plaintiff's rescission claim. Plaintiffs sued for

13   "rescission of a settlement and release entered into by the parties on the ground of

14   fraudulent inducement against all defendants," and common law fraud. *Id*., *1. Like

15   the Settlement Agreement here, the settlement in *Lancer* included a statement that

16   the parties did not rely on any representations outside the agreement itself. *Id*., *3.

17   The agreement also acknowledged that all parties were represented by counsel. *Id*.

18       The release in *Lancer* included a waiver of California Civil Code 1542, as

19   well as a clause stating that, "[e]ach party is aware that it may hereafter discover

20   claims or facts in addition to or different from those it now knows or believes to be

21   true with respect to the matters related herein. Nevertheless, it is the intention of the

22   parties to fully, finally and forever to [sic] settle and release all such matters, and all

23   claims relative thereto, which do now exist, may exist, or heretofore have existed

24   between them." *Id*., *2.

25       Applying California law, the district court granted defendants' 12(b)(6)

26   motion. The Court held that "In arriving at this conclusion, the Court is primarily

27   persuaded by the clear and unambiguous language of the Settlement and Release."

28   *Id*., *4. The Court reasoned that "the Settlement and Release explicitly expresses the

1    parties' intention to 'fully, finally and forever ... settle and release' all matters . . . ."
2    *Id*. "Moreover, in addition to providing in the Settlement and Release that they did
3    not rely on any representations made by the other party . . . [N]ot only did plaintiffs
4    assume 'the risk of any unknown or concealed facts or information, whether such
5    occurred intentionally or through inadvertence, as well as any mistake of facts or
6    information' but they specifically acknowledged that they would not be entitled to
7    relief should they later discover an untruth about a fact relied upon in entering into
8    the Settlement and Release." *Id*.

9        The Court held that "It could not be more clear to the Court that plaintiffs are
10   now asserting that they actually did rely on a statement made outside the contract—
11   i.e. Willard's alleged representation that there was no additional information to
12   disclose—in an attempt to cancel the entire agreement." The Court concluded that
13   ***"any alleged reliance on an outside statement which so clearly contradicts the***
14   ***language in the Settlement and Release is unreasonable and not justified as a***
15   ***matter of law."*** *Id*. (emphasis added).

16       In reaching its holding, the district court explicitly distinguished the
17   California Court of Appeal's decision in *Ron Greenspan Volkswagen, Inc. v. Ford*
18   *Motor Land Dev't Corp.*, 32 Cal.App.4th 985 (1995), which held merely that
19   "plaintiffs are entitled to sue for fraud under California law despite the existence of
20   a signed contract stating that they did not rely on representations outside the
21   contract." *Id*., *5. The Court explained that *Greenspan* merely involved a statement
22   that "[n]o express or implied representations, warranties, or inducements have been
23   made by any party to any other party except as set forth in this Agreement." *Id*. The
24   Court held in *Lancer* that "[t]he words used in the Settlement and Release in the
25   present case—specifically, that there may be adverse facts not being disclosed—
26   appear to have been intentionally added to avoid the exact same claim which
27   plaintiffs now bring." *Id*.

28       The "assumption of risk" language in *Lancer* is indistinguishable from the

2871396

14

language of the Settlement Agreement. The parties agreed that, "In connection with this waiver, the Parties acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or ***facts in addition to or different from those which they now know or believe to be true***, with respect to Released Claims. The Parties acknowledge that the releases set forth in this Agreement shall be and shall remain in effect as full and complete releases notwithstanding the discovery or existence of any such ***additional or different claims or facts relevant*** hereto." Dkt. 29-1, pp. 13-14, ¶ 1.5 (emphasis added). Gruen also acknowledged that he was independently represented by his attorney, and that, upon consultation with his attorney, he "***executed this Agreement without fraud, duress or undue influence***." *Id*., p. 15, ¶ 2.5 (emphasis added). Because the above language was "intentionally added to avoid the exact same claim which plaintiff[] now bring[s]," Gruen's Rescission Claims fail as a matter of law. *Lancer Offshore*, 2002 WL 441309, *5.

California law also bars rescission claims as a matter of law where the plaintiff specifically disclaimed reliance on statements by defendants. *See Belasco v. Wells*, 234 Cal. App. 4th 409, 414 (2015) (rejecting rescission claim based upon alleged fraud where the settlement agreement's waiver showed that plaintiff "specifically admitted his decision to enter into the 2006 settlement was a product of his own judgment and not influenced by any statement"); *see also Hinesley v. Oakshade Town Ctr.*, 135 Cal. App. 4th 289, 302 (2005) (holding that "such express language should have conveyed the implication" that the parties were not relying on particular representations).

Additionally, Gruen's concession that he was represented by counsel during the negotiation of the Settlement Agreement with adverse parties is also fatal to his claims. Numerous decisions issued by District Courts in this state have held that "*[w]here a party is **represented by counsel, _or_** where the **alleged misrepresentation was made by an adversary during the course of negotiations,*** courts have held that

1 ***reliance is unjustifiable.*** *Borg v. Principal Life Ins. Co.*, 2008 WL 11453724, at *3
2 (N.D. Cal. July 24, 2008) (emphasis added) (citing *Scognamillo v. Credit Suisse*
3 *First Boston LLC*, 2005 WL 2045807 at *23 (N.D. Cal. Aug 25, 2005); *see also*
4 *Facebook, Inc. v. ConnectU*, Inc., 2008 WL 8820476, at *5 (N.D. Cal. June 25,
5 2008) (same); *Microsoft Corp. v. Hon Hai Precision Indus. Co.*, 2020 WL 836712,
6 at *12 (N.D. Cal. Feb. 20, 2020) (same); *Barkett v. Sentosa Properties LLC*, 2015
7 WL 3756348, at *7 (E.D. Cal. June 16, 2015) (same).

8      Decisions of the California Court of Appeal are in accord. *See, e.g.*, *Wilhelm*
9 *v. Pray, Price, Williams & Russell*, 186 Cal. App. 3d 1324, 1332 (1986) ("Goodman
10 was represented by counsel at the time of the alleged misrepresentations. . . . Also, it
11 would not be 'reasonable' for Goodman to accept Cohen's representations as an
12 adversary without an independent inquiry.").

13      Here ***both*** elements are present: Gruen admits that he was represented, and he
14 was in negotiations with parties who were, according to his FAC, openly hostile to
15 him, and who he had already accused of cheating him. Accordingly, Gruen's alleged
16 reliance on Defendants' Litigation Counsel's and business manager's statement
17 during settlement negotiations is unreasonable as a matter of law.

18      Finally, the Ninth Circuit Court of Appeals has affirmed the dismissal of
19 fraudulent inducement claims based on similar settlement agreements that only
20 contained generic language stating non-reliance on representations outside the
21 agreement. *See In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 958 (9th Cir. 1994)
22 ("Even assuming that Amerivest made such promises, CEA could not have
23 reasonably relied on them. . . . CEA expressly and unambiguously admitted that it
24 was not relying on any inducements not contained therein."); *Brae Transp., Inc. v.*
25 *Coopers & Lybrand*, 790 F.2d 1439, 1445 (9th Cir. 1986) ("The Release bars Brae
26 from raising allegations about misrepresentations. Brae admitted unequivocally in
27 the Release . . . that it was not relying on any inducements, promises, or
28 representations not contained therein. That resolves the issue.").

1   Gruen's assertion of his released claims is therefore unwarranted by existing

2   law. *See* Fed. R. Civ. P. 11(b)(2).

3   **B.      The Alleged Fraud Is Predicated On Statements Protected By The**

4   **Mediation Privilege**

5   Gruen's fraud allegations are also frivolous because all of the allegedly

6   fraudulent communications are contained in mediation-privileged attorney

7   communications. Gruen alleges that Defendants fraudulently induced him to enter

8   into the Settlement Agreement by (1) misrepresenting the value of Crosscheck, (2)

9   misrepresenting the status of the Amazon deal, and (3) denying him a full

10  accounting of Crosscheck's business records. Dkt. 29, ¶¶ 111-118, 9-11, 81, 88. The

11  FAC identifies Reynolds' April 14, 2022 settlement letter as containing the alleged

12  fraudulent misrepresentations and omissions concerning Crosscheck's value and the

13  status of the Amazon deal. Dkt. 29, ¶¶ 9, 11, 81, 88, 117. The FAC identifies no

14  other alleged communications Gruen relied on.

15  Under California law, statements and writings "prepared for the purpose of, in

16  the course of, or pursuant to a mediation" are inadmissible and not subject to

17  disclosure. Cal. Evid. Code §1119(a), (b). "Mediation confidentiality protects

18  communications and writings if they are materially related to, and foster, the

19  mediation." *Wimsatt v. Superior Court*, 152 Cal. App. 4th 137, 160 (2007).

20  Construing Section 1119, the California Supreme Court stressed the breadth of

21  protection afforded, and "conclude[d] that there are no exceptions to the

22  confidentiality of mediation communications." *Foxgate Homeowners' Ass'n, Inc. v.*

23  *Bramalea California, Inc.*, 26 Cal. 4th 1, 4 (2001); *see also Rojas v. Superior Ct.*, 33

24  Cal. 4th 407, 416-17 (2004).

25  Both the April 14, 2022 letter and any subsequently-provided financial

26  information are protected from disclosure and use in legal proceedings by

27

28

California's mediation privilege. Cal. Evid. Code §§ 1115 *et seq*.[3]  "Mediation confidentiality protects communications and writings if they are materially related to, and foster, the mediation." *Wimsatt v. Superior Court*, 152 Cal. App. 4th 137, 160 (2007).  These strict mediation confidentiality provisions, codified in in California Evidence Code section 1115 *et seq*, are "***clear and absolute***", and "do not permit judicially crafted exceptions or limitations." *Cassel v. Superior Court,* 51 Cal. 4th 113, 118 (2011) (emphasis added).

California district courts regularly strike portions of pleadings that referenced confidential mediation communications. *See, e.g., Blodgett v. Allstate Ins. Co.*, 2012 WL 2377031 (E.D. Cal. June 22, 2012) (striking confidential, mediation-privileged settlement amount evidence from plaintiff's bad faith complaint); *Harman v. Golden Eagle Ins. Co*., 2018 WL 1791915 (S.D. Cal. Apr.16, 2018) (striking mediation communications and dollar amount offers from complaint); *Liberty Surplus Ins. Corp. v. Ledesma & Meyer Constr. Co.*, 2012 WL 12896220 (C.D. Cal. June 19, 2012) (striking from pleading settlement offers and demands made in underlying action).

The April 14, 2022 letter is privileged by California's mediation privilege and inadmissible as a matter of law. An ***offer to mediate***, premised with counsel's assessment of the merits of his clients' claims and defenses, is obviously "materially related to" and "fosters" a mediation. *Wimsatt*, 152 Cal. App. at 137. Indeed, as evident from the emails exchanged by the parties' respective counsel and the Complaint's admission that the mediation actually took place, the April 14, 2022 letter led to the scheduled mediation and thereby "fostered" it. *See id*.

Any argument that the parties had not yet scheduled a mediation at the time of the correspondence is untenable because courts expressly held that Section 1119

---

[3] Federal courts apply state privilege laws to claims that arise out of state law. *See* FRE 501. *See, e.g.*, *Liberty Surplus Ins.,* 2012 WL 12896220, at *3.

applies prior to a scheduled mediation. *See Liberty Mut. Fire Ins. Co. v. Bosa Dev. California II, Inc*., No. 3:17-CV-0666-AJB-BGS, 2019 WL 3306304 *3-4 (S.D. Cal. July 23, 2019) (rejecting a narrow reading of Section 1119 that documents prepared prior to any scheduled mediation is not protected, noting "there is a large amount of support holding the opposite").

Additionally, to the extent Gruen alleges he was induced to enter into the Settlement Agreement based on "misleading financials" (Dkt. 29, ¶ 18) and the denial of "a full accounting" (*id*., ¶¶ 10, 112), all financial documents are inadmissible as they were provided solely in furtherance of mediation and settlement under the parties pre-mediation Confidentiality Agreement. Reynolds Decl., Exs. 3-5; *see Rojas v. Superior Ct*., 33 Cal. 4th 407, 417 (2004).

Accordingly, because Gruen purports to assert fraudulent inducement based on mediation-privileged communications, Gruen's claim has no basis in existing law and is frivolous.

## C.   The Alleged Fraud Is Predicated On Statements Protected By The Litigation Privilege

California's litigation privilege immunizes prospective and pending litigants and their representatives from liability arising from statements made in connection with actual or anticipated litigation. Cal. Civ. Code § 47.

"The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990). The purpose of the privilege is to "afford litigants and witnesses the utmost freedom of access to the courts without fear of being harassed." *Id*. at 213.

The litigation privilege is "an 'absolute' privilege." *Hagberg v. California Fed. Bank*, 32 Cal. 4th 350, 360 (2004). "The litigation privilege protects conduct

1   *even if it is 'alleged to be fraudulent, perjurious, unethical, or even*

2   *illegal.'"* *Kashian v. Harriman*, 98 Cal.App.4th 892, 920 (2002) (emphasis added);

3   *see also Flatley v. Mauro*, 39 Cal. 4th 299, 322 (2006) ("[t]he litigation privilege has

4   been applied in numerous cases involving fraudulent communication[s].").  "Any

5   doubt as to whether the privilege applies is resolved in favor of applying it." *Adams*

6   *v. Superior Court*, 2 Cal.App.4th 521, 529 (1992).

7        The litigation privilege "applies to **statements made by counsel during**

8   **settlement negotiations**." *Home Ins. Co. v. Zurich Ins. Co.*, 96 Cal. App. 4th 17, 24

9   (2002) (emphasis added) (citing *Asia Inv. Co. v. Borowski*, 133 Cal. App. 3d 832,

10  843 (1982); *Dowling v. Zimmerman* 85 Cal.App.4th 1400, 1422 (2001); *Joseph A.*

11  *Saunders, P.C. v. Weissburg & Aronson*, 74 Cal.App.4th 869, 875 (1999)).

12       The litigation privilege also "appl[ies] to '**statements made prior to the filing**

13  **of a lawsuit.**'" *Flatley*, 39 Cal. 4th at 322 (emphasis added); *see also Hagberg*, 32

14  Cal. 4th at 361 ("it is late in the day to contend that communications with 'some

15  relation' to an *anticipated* lawsuit are not within the privilege."). Specifically, the

16  California Supreme Court has held that the privilege applies "to communications

17  with **some relation to a proceeding that is . . . under serious consideration**;

18  potential court actions; and to preliminary conversations and interviews related to

19  contemplated action, and we also have determined that the privilege applies to

20  communications made, prior to the filing of a complaint, by a person **meeting and**

21  **discussing with potential parties the merits of the proposed . . . lawsuit**." *Hagberg*,

22  32 Cal. 4th at 361 (emphasis added, cleaned up).

23       Accordingly, the Court of Appeal has held, for example, that a prelitigation

24  demand letter is "fully privileged under section 47 as preliminary to a judicial

25  proceeding." *Lerette v. Dean Witter Org., Inc.,* 60 Cal. App. 3d 573, 578 (1976).

26  Settlement demands and negotiations are absolutely privileged regardless of how

27  aggressive they may be. *See, e.g.*, *Asia Inv. Co. v. Borowski*, 133 Cal. App. 3d 832,

28  843 (1982) (settlement offer that was a "veiled threat" was privileged). Fraudulent

1   representations made during settlement negotiations are also absolutely privileged.

2   *See, e.g.*, *Home Ins. Co.*, 96 Cal. App. 4th at 21 (holding that a "fraudulent

3   misrepresentation [that] was made to induce [settlement] for only 3 percent of the

4   policy limits" was absolutely privileged).

5        As discussed above, Gruen's Rescission Claim is premised on alleged

6   representations and omissions made "in the context of settlement negotiations," as

7   well as other threats against Gruen. Dkt. 1, ¶ 119. These statements cannot form the

8   basis of any claim because, as Gruen concedes, they were made in connection with

9   settlement negotiations and they concerned the subject matter of litigation that was

10  under serious consideration by both parties. *See Hagberg*, 32 Cal. 4th at 361.

11       First, Gruen's Litigation Counsel initiated the dispute by sending a litigation

12  hold letter stating the following: "<u>I anticipate that litigation, in an action for an</u>

13  <u>accounting at minimum, will be necessary to protect my client's rights</u>. . . .

14  [L]itigation is anticipated . . . ." Reynolds Decl., Ex. 1; Dkt. 29, ¶ 79. The following

15  day, Gruen's counsel sent a letter labeled "FOR LITIGATION PURPOSES,"

16  demanding that "his share of the profit be paid out," or else he would "file a

17  lawsuit." Reynolds Decl., Ex. 2; Dkt. 29, ¶ 79. Gruen is therefore estopped from

18  arguing that litigation was not seriously considered by Defendants when Gruen's

19  attorney represented the exact opposite.

20       Second, the Settlement Agreement expressly acknowledges that the Parties

21  entered into it "solely to ***avoid the cost and uncertainty of <u>further litigation</u>***." Dkt.

22  29-1, p. 12 (emphasis added).

23       Third, Gruen's original Complaint expressly alleged and conceded that all of

24  the allegedly fraudulent communications under the Fraud Claim were made "***in the***

25  ***context of settlement negotiations***." Dkt. 1, ¶ 119 (emphasis added).

26       Fourth, the April 14, 2022 letter is a response to a litigation threat outlining

27  potential counter-claims by Richards against Gruen. Dkt. 29, ¶ 14; Reynolds Decl.,

28  Ex. 3. In other words, it "discuss[ed] with potential parties the merits of the

1  proposed . . . lawsuit," and it is therefore privileged. *Hagberg*, 32 Cal. 4th at 361.

2  Fifth, Gruen admits the parties mediated and settled the dispute. Dkt. 29, ¶ 3,

3  n. 2.

4  Accordingly, because the Complaint affirmatively alleged that litigation was

5  seriously contemplated between the parties and that all of the alleged

6  communications took place in the context of prelitigation settlement discussions, the

7  conduct alleged is absolutely immunized from forming the basis for any request for

8  relief. The FAC's argument that Gruen is entitled to "a cumulative total of up to

9  $40,547,312.50," Dkt. 29, p. 34, as result of Defendants' counsel's pre-litigation

10  settlement and demand letter is therefore frivolous as a matter of law.

11  **D.**  **Gruen's Employment Claim (Claim 3) Also Falls Squarely Within**

12  **The Scope Of The Settlement Agreement**

13  Courts "independently construe the writing to determine whether the release

14  encompasses the present claim." *Salehi v. Surfside III Condo. Owners' Assn.*, 200

15  Cal. App. 4th 1146, 1159 (2011).  It is well established that a clear and

16  unambiguous general release is a complete defense to any released claims, whether

17  known or unknown at the time of settlement.  *Belasco v. Wells,* 234 Cal. App. 4th

18  409, 421-22 (2015).  Here, the settlement agreement broadly released Richards,

19  Sawtelle, Crosscheck Studios and "its respective members, shareholders, partners,

20  subsidiaries, affiliates, agents, officers, directors, attorneys, employees,

21  representatives" from "all charges, complaints, claims, causes of action, liabilities of

22  any kind…whether known or unknown, suspected or unexpected, and whether or

23  not concealed or hidden of any nature." Dkt. 29-1, p. 13. Given the clear language of

24  the release, and the alleged inadequate compensation was for work Gruen performed

25  for Crosscheck Studios and Buddy's Hard up to February/March 2022, which was

26  months before he signed the settlement agreement in June 2022, Gruen's Wage

27  Claim is transparently unviable. Dkt. 29, ¶¶ 68, 77, 136.

28

1  **VI.**    <u>**CONCLUSION**</u>

2       Defendants respectfully request that the Court dismiss Gruen's FAC and

3  award Defendants their attorney's fees.

4

5  DATED:  July 11, 2024        EISNER, LLP

6

7

8                  By: _____

9                     JEREMIAH REYNOLDS
                      Attorneys for Defendants

10                    JOSHUA RICHARDS; CHRISTOPHER
                      SAWTELLE; CROSSCHECK STUDIOS,

11                    LLC; and BUDDY'S HARD, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## STATEMENT OF COMPLIANCE

2     The undersigned, counsel of record for Defendants Joshua Richards;

3 Chirstopher Sawtelle; CrossCheck Studios, LLC; and Buddy's Hard, LLC, certifies

4 that this brief contains 6994 words, which complies with the word limit of L.R. 11-

5 6.1.

6

DATED:  July 11, 2024          EISNER, LLP

7

8

9                                           By: _____

10                                          JEREMIAH REYNOLDS

11                                          Attorneys for Defendants
                                            JOSHUA RICHARDS; CHRISTOPHER

12                                          SAWTELLE; CROSSCHECK STUDIOS,
                                            LLC; and BUDDY'S HARD, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28